THOMAS ATHENS, Plaintiff-Appellant, v. HARRIS TRUST AND SAVINGS BANK, as Trustee, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—97—1941

Opinion filed June 30, 1998.

William D. Dallas, of Regas, Frezados & Harp, of Chicago, for appellant.

Richard A. Wohlleber and David T.B. Audley, both of Chapman & Cutler, of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:
Thomas Athens (Athens) appeals an order entered in favor of Harris Trust and Savings Bank (Harris), as land trustee under a trust agreement dated October 25, 1982, and known as trust No. 41980.

Athens sought a declaratory judgment that Harris, as land trustee of trust No. 41980 (the land trust), did not accept a condominium unit located at 21 Court of Greenway, Northbrook, Illinois (the Northbrook property), into the land trust. Athens, a judgment creditor of Angelo Geocaris seeking to foreclose on his judgment lien, sought an order that, upon the failure of the conveyance, a resulting trust was created rendering the Geocarises the owners of the Northbrook property. We affirm the trial court's entry of judgment in favor of Harris.

This dispute has a textured procedural history. On June 30, 1992, Athens obtained a judgment against Angelo Geocaris in the amount of $78,969.06. On February 19, 1993, Athens served a citation to discover assets on Harris and seeking information on trust No. 41980. Athens filed his second-amended verified complaint in equity for resulting trust and other relief on July 21, 1994, seeking a declaration that Angelo and Irene Geocaris held the Northbrook property in a "resulting trust" and seeking to foreclose on his judgment lien.

Athens argued that his judgment attached to the Northbrook property because defendant Harris, as trustee, failed to "accept" the Northbrook property as required by law and by the terms of the land trust agreement dated October 25, 1982, identified as trust No. 41980. Athens maintained that Harris' failure to "accept" the Northbrook property, together with its "closure" of the trust, warrants imposition of a resulting trust by which the Geocarises would obtain ownership of the Northbrook property. Additionally, Athens claimed he was unaware that the Geocarises were indebted to Harris when he recorded his judgment lien on July 16, 1992.

Athens filed a motion for summary judgment, as did Harris. In support of its summary judgment motion, Harris argued that the trust held title to the Northbrook property, that Harris had a perfected security interest in the Northbrook property pursuant to collateral assignment, and that Harris had an equitable lien against the Northbrook property. The trial court ruled that Harris had not "accepted" the Northbrook property into the trust and granted Athens' motion for summary judgment and denied Harris'. In so ruling, the trial court reasoned that property could not be "foisted" upon the trust, but must be accepted by it. The trial court concluded that the affidavit statements of Kenneth Piekut (Piekut), Harris land trust officer, claiming that Harris did "accept" the Northbrook property, were incredible given his previous deposition testimony and Harris' letters to the Geocarises referring to "closed trust" No. 41980.

Harris appealed the trial court's order granting Athens' motion for summary judgment in the declaratory judgment action. On September 5, 1996, a panel of this court reversed the trial court's

entry of summary judgment in favor of Athens and affirmed its denial of Harris' motion for summary judgment. The panel found a genuine issue of material fact remained as to whether the Northbrook property was "accepted" into the trust.

After a bench trial, the trial court entered judgment in favor of Harris. The trial court found that Harris, as land trustee, and the Geocarises as beneficiaries, had intended for the Northbrook property to be deeded into trust No. 41980 and administered by Harris, subject to an existing collateral assignment under land trust (collateral ABI). Under the terms of the collateral ABI, 100% of the beneficial interest in trust No. 41980 was assigned to Harris as security for certain business loans guaranteed by Angelo and Irene Geocaris.

The trial court concluded that Harris, as land trustee, had agreed to act as trustee and to accept title to the Northbrook property. The court grounded its decision on the intention of the parties, the particular facts of this case, and on its determination that Harris, as trustee, was aware of the substance of the transaction outlined in the letter agreement between an attorney for Harris, Terry McIlroy (McIlroy), and the Geocaris attorney, Jim Roche (Roche), dated January 30, 1992. As further evidence of Harris' acceptance, the trial court noted Piekut's participation in facilitating the transaction.

Athens filed a motion for reconsideration, which was denied. Athens now appeals the trial court's determination that Harris, as trustee of land trust No. 41980, accepted title to the Northbrook property on January 30, 1992, claiming that the trial court's determination is against the manifest weight of the evidence and contrary to law.

The following events informed the trial court's decision. Angelo and Irene Geocaris had a business lending relationship with Harris. To facilitate that relationship, the Geocarises executed a trust agreement at Harris on October 25, 1982, creating land trust No. 41980. On that date, the Geocarises deeded their residence at 159 North Sheridan Road, Winnetka, Illinois (Winnetka property), into trust No. 41980. That same day, the Geocarises executed a collateral ABI, assigning 100% of the beneficial interest in trust No. 41980 to Harris as security for various business loans.

After the Geocarises suffered business setbacks, they entered into an agreement with Harris on February 13, 1990, providing terms by which they would repay their existing indebtedness to Harris. Pursuant to paragraph 5(a) of that agreement, the parties agreed that if the Geocarises' Winnetka property were sold, certain of the proceeds would be applied to the Geocarises' indebtedness to Harris. However, an amount of the proceeds of the sale not to exceed $600,000 could be used by the Geocarises to purchase a new residence, provided Harris

was given a first lien in the new residence to secure the remaining indebtedness.

Thereafter, the Geocarises decided to sell their Winnetka property and purchase the condominium unit at issue, the Northbrook property, for $200,000. By a letter agreement dated January 30, 1992, between McIlroy and Roche, the Geocarises and Harris set forth the details of the transaction by which the Northbrook property would be substituted for the Winnetka property as the collateral securing their indebtedness. The Winnetka property was to be sold and deeded out of trust No. 41980 at a closing on the morning of February 3, 1992, with approximately $200,000 of the proceeds of that sale being reserved for the Geocarises' purchase of the Northbrook property.

The letter agreement further provided that the Northbrook property was to be deeded into trust No. 41980 on the afternoon of February 3, 1992, following the sale of the Winnetka property that same morning. Through this transaction, Harris could maintain its first lien position pursuant to the existing collateral assignment, which Harris had not released and which stood as security for the Geocarises' remaining indebtedness to Harris. The letter agreement also provided that Roche was to hold in trust the specified amount from the sale of the Winnetka property on the morning of February 3, 1992, until after the Geocarises had closed on their purchase of the Northbrook property that afternoon and the sellers of the Northbrook property had deeded it into trust No. 41980.

On the day the parties signed the letter agreement, there is evidence in the record to suggest that Roche met with McIlroy, Frank Slocum (Slocum), the Harris lending officer working with the Geocarises and, eventually, with Piekut. Though Piekut did not recall the detail of that meeting, he acknowledged that his files contained a letter to him from Roche dated January 31, 1992, referencing that meeting of January 30, 1992, at Harris' land trust office. Piekut further testified that he had no reason to doubt that he met with Roche and Slocum. The letter referencing the meeting also enclosed a standard form "Harris Bank Direction To Convey," further suggesting that Piekut facilitated the transaction by providing Roche the forms necessary to complete it. Neither Piekut nor anyone else at Harris objected to having the Northbrook property deeded into trust No. 41980.

The sale of the Winnetka property and the purchase of the Northbrook property were completed as planned on February 3, 1992. Pursuant to the letter agreement, the sellers of the Northbrook property executed a quitclaim deed in trust (deed in trust), deeding the Northbrook property into trust No. 41980. The deed in trust, which expressly provided that Harris as land trustee was the title owner of

the Northbrook property, was duly recorded on February 6, 1992. An erroneous notation on the deed in trust instructed the recorder's office to return the instrument to Roche, not to Harris. As a result, Harris did not receive the deed in trust until approximately 1½ years later.

Upon the sale of the Winnetka property, Harris Trust marked "closed" the trust file on trust No. 41980. The trust file was administratively "closed" because the trust file did not yet contain the deed in trust of the newly purchased and substituted Northbrook property. The only parcel of real estate in trust No. 41980 on February 3, 1992, was the Winnetka property which had been deeded out of the trust.

Piekut explained that marking a trust file "closed" constitutes an administrative notation on the file, and the file is then transferred from one drawer to another. Jim Perner (Perner) of Harris testified that it was not uncommon in land trust financing and conveyances for deeds in trust to take many months to be returned from the recorder's office to the land trust file. Upon receipt of the deed in trust, Harris then reopens the file and assesses administrative fees owed, as it did in this case, from the time the deed in trust was executed.

On June 30, 1992, approximately five months after the Northbrook property was deeded to trust No. 41980 and recorded, Athens obtained a judgment against Angelo Geocaris. Some months later still, Athens served a citation to discover assets on Harris seeking information pertaining to trust No. 41980. In its partial answer, Perner, unaware of the letter agreement and of the deed to the Northbrook property, stated that the trust file for trust No. 41980 was administratively "closed." Based upon Harris' review of the file, the Geocarises also received information indicating that the trust file for trust No. 41980 had been administratively "closed." Despite the designation of the trust file as "closed," Perner testified that Harris had never resigned as land trustee of trust No. 41980 or declined to accept the Northbrook property. Perner said he himself had never accepted the conveyance to the Northbrook property. But Piekut, who also possessed the authority to accept conveyances into land trusts at Harris, said he did not formally accept the conveyance to the Northbrook property until Harris received the deed in trust. However, Piekut also stated that there is no formal procedure for acceptance.

■ In this case, the trial court found that Harris accepted title to the Northbrook property on the date of the letter agreement between the Geocarises and Harris. In so doing, the trial court determined that the Northbrook property was held in land trust No. 41980. In a bench trial, the trial judge weighs the evidence and makes findings of fact. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 433, 581 N.E.2d 656,

660 (1991). A reviewing court will defer to the trial judge's findings of fact when they are dependent upon the credibility of witnesses, unless the findings are against the manifest weight of the evidence. *Kalata*, 144 Ill. 2d at 433, 581 N.E.2d at 660. A ruling is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 747, 607 N.E.2d 1337, 1344 (1992). Questions of law are reviewed *de novo*. *Statler v. Catalano*, 293 Ill. App. 3d 483, 486, 691 N.E.2d 384, 386 (1997).

■ Simply put, Athens contends that the trial court dispensed with the "acceptance" requirement in this case when it found that Harris accepted the Northbrook property into the trust. However, Athens mischaracterizes the nature of the "acceptance" required of Harris as trustee in this instance. Athens suggests that some other overt, formal act of "acceptance" is required and is lacking. We do not agree. The letter agreement between the Geocarises and Harris detailed the terms of the transaction at issue. The record suggests that Harris trust officer Piekut supplied the necessary forms to complete the transaction after being informed that the Northbrook property was a single-family residence, the type of property known by him to be acceptable as the subject of a land trust administered by Harris. The deed in trust to the Northbrook property was duly recorded and showed Harris as the titleholder. Consequently, we conclude that Harris did accept the Northbrook property as the subject property of trust No. 41980 as of the date of the letter agreement, January 30, 1992.

Athens further argues that the trial court's determination that Harris accepted the Northbrook property on January 30, 1992, four days before the deed for the Northbrook property into the trust was prepared and signed, was against the manifest weight of the evidence and contrary to law. Athens claims the terms of the trust agreement itself prohibit acceptance prior to the conveyance of the property. As to this claim, Athens relies on the following language contained in the trust agreement: "that when it [Harris] has taken the title thereto, or accepted title to any other real estate deeded to it as trustee hereunder, it will hold it." Athens maintains that this language shows that the Northbrook property had to be deeded to the land trustee prior to acceptance and, therefore, that acceptance could not have occurred prior to the preparation and signing of the deed in trust.

This argument is specious for several reasons. First and foremost, the mechanics of this particular transaction required Harris, as trustee, to accept the Northbrook property as the appropriate subject of trust No. 41980 prior to the execution and delivery of the deed in trust. The trial court correctly looked to the testimony of those

involved, to the existing land trust agreement, to the letter agreement, to the collateral assignment, to the meeting at Harris' land trust office, and to Harris' land trust administration practices to determine that "acceptance" was not absent in this instance.

Second, trust officer Piekut's failure to recall the meeting of January 30, 1992, at Harris' land trust office regarding the Northbrook property does not lead to the legal conclusion that Harris, as trustee, did not "accept" the Northbrook property at that time. Nor does the fact that Harris may not have followed scrupulously its own internal procedures undermine the effect of the parties clear intentions and conduct. To conclude otherwise would elevate form over substance.

Finally, we do not agree that Harris' delayed receipt of the deed in trust should govern the outcome of this case. Athens correctly notes the distinction between Harris' acceptance, as trustee, of the property as the appropriate subject of a land trust and its acceptance of the actual conveyance of the property. However, the distinction under the peculiar facts of this case is largely formal. Athens confuses the concept of acceptance as used in the more general context of grantor and grantee relationships with the concept of acceptance more appropriate in this particular factual context: a specific land trust agreement, collateral ABI, and letter agreement between the Geocarises and Harris.

In this case, the conveyance of the Northbrook property imposed not a burden, but a benefit in the form of collateral securing the Geocarises' outstanding indebtedness to Harris as trustee. The benefit flowing from the conveyance and Harris' acceptance of it was evidenced by the collateral ABI and the letter agreement. Consequently, we conclude that Harris evidenced its intent to accept title to the Northbrook property upon conveyance through its attorney by the letter agreement dated January 30, 1992. Therefore, we affirm the trial court's order entering judgment in favor of Harris.

Affirmed.

HOFFMAN, P.J., and HARTMAN, J., concur.