704 N.E.2d 964 (1998)
301 Ill. App.3d 683
235 Ill.Dec. 391
In re MARRIAGE of Susan M. RAAD, Petitioner-Appellant, and
Nabil E. Raad, Respondent-Appellee.
No. 2-98-0139.
Appellate Court of Illinois, Second District.
December 30, 1998.
*965 Scott P. Walthius, Law Office of Scott P. Walthius, Winfield, for Susan M. Raad.
John C. North, Borla, North & Associates, P.C., Downers Grove, for Nabil E. Raad.
Justice COLWELL delivered the opinion of the court:
Petitioner, Susan M. Raad, appeals from an order of the circuit court of Du Page County dissolving her marriage with respondent, Nabil E. Raad, contending that the trial court erroneously classified part of her individual retirement account (IRA) as marital property and that the trial court erroneously determined the amount of medical expenses for which she was responsible for the parties' two minor children. We reverse in part and affirm in part.

FACTS
On May 29, 1984, petitioner began her employment with Baxter Healthcare Corporation International (Baxter). On April 1, 1986, petitioner began participating in the Baxter Incentive Investment Plan (the plan), a retirement plan. Both petitioner and Baxter made contributions to petitioner's account, and petitioner was 100% vested from the start of her participation.
The parties married on September 30, 1989. At that time, petitioner's account was valued at $24,446.37. Petitioner ended her employment with Baxter in July 1990 but continued contributing to the plan until December 31, 1990, when her interest in the plan ended. Petitioner's account was valued at $35,090.99 at that time. Petitioner contributed $6,257.42 between September 30, 1989, and December 31, 1990.
Petitioner deposited her $35,090.99 from the plan into the parties' joint checking account while she determined where to put it on a permanent basis. On March 26, 1991, petitioner rolled the $35,090.99 over into an IRA in her own name.
Petitioner filed a petition for dissolution of marriage on September 18, 1996. As of July 31, 1997, petitioner's IRA was valued at $79,415.38. Petitioner testified that she made no contributions after the $35,090.99 rollover.
On November 12, 1997, the trial court entered a judgment for dissolution of marriage. The trial court awarded petitioner sole custody of the parties' two minor children, granted respondent visitation rights, and ordered respondent to pay petitioner $156.63 every two weeks until the youngest child turned 18 years old or graduated from high school, whichever occurred last. The trial court also ordered respondent to pay petitioner $77 per month for day care as long as the children were in day care.
The trial court further ordered petitioner to pay for the cost of the children's major medical and hospitalization insurance and their ordinary medical expenses. The trial court defined ordinary medical expenses as "any visit, procedure or device which costs less than $100.00." Further, the trial court ordered petitioner and respondent equally to pay for the costs of all extraordinary medical, dental, optical, orthodontic, and educational expenses.
Regarding petitioner's IRA, the trial court found that $24,169.91 of petitioner's IRA was her nonmarital property. Consequently, the trial court also found that the remaining $55,245.46 of her IRA was marital property.
Finally, the trial court awarded petitioner the following marital property: (1) the marital residence valued at $60,027.55; (2) $25,000 in settlement funds from a lawsuit; and (3) $27,622.73 representing half of the marital assets in her IRA from her employment with Baxter. The trial court also awarded petitioner the following nonmarital property: (1) $8,772.47 in an IRA from her employment with the Scottsdale School District; (2) $24,169.91 in her IRA from her employment with Baxter; (3) 55 shares of Baxter stock valued *966 at $2,592.50; (4) a 1987 BMW automobile; and (5) a note representing her $20,000 personal financing of the buyers of her original house prior to the marriage. The trial court awarded respondent the following marital property: (1) a promissory note worth $31,502.70; (2) an automobile valued at $17,000; (3) $25,000 in settlement funds from a lawsuit; (4) $27,622.73 representing half of the marital assets in petitioner's IRA from her employment with Baxter; and (5) $11,170.68 in escrow funds. Petitioner's portion of the marital assets was valued at $112,650.28, and respondent's portion of the marital assets was valued at $112,296.11.
On December 5, 1997, petitioner filed a posttrial motion, and on December 11, 1997, respondent likewise filed a posttrial motion. On December 30, 1997, the trial court denied the majority of the parties' issues. On January 28, 1998, petitioner filed her appeal.

ANALYSIS

I. CLASSIFICATION OF PETITIONER'S IRA
We find that the trial court erred when classifying petitioner's IRA as marital and nonmarital property. Before the trial court may dispose of property upon the dissolution of a marriage, the property must be classified as either marital or nonmarital property. In re Marriage of Jelinek, 244 Ill.App.3d 496, 503, 184 Ill.Dec. 692, 613 N.E.2d 1284 (1993). Typically, the trial court's classification will not be disturbed by the reviewing court unless it is contrary to the manifest weight of the evidence. Jelinek, 244 Ill.App.3d at 503, 184 Ill.Dec. 692, 613 N.E.2d 1284. Our review in this case, however, concerns a question of law. Consequently, our review is de novo. Athens v. Harris Trust & Savings Bank, 297 Ill.App.3d 1055, 1060, 232 Ill.Dec. 167, 697 N.E.2d 909 (1998)(questions of law are reviewed de novo).
In this case, the trial court relied on In re Marriage of Hunt, 78 Ill.App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511 (1979), to determine that $24,169.91 of petitioner's IRA was her nonmarital property and that $55,245.46 of her IRA was marital property. The facts in Hunt, however, are distinguishable from the facts in this case. Unlike this case, the respondent in Hunt, who was entitled to pension and profit-sharing benefits, began his employment after the marriage. As a result, the respondent in that case earned all of his pension and profit-sharing benefits after he was married. Hunt, 78 Ill.App.3d at 655, 34 Ill.Dec. 55, 397 N.E.2d 511.
In contrast, in this case, petitioner contributed the majority of the money in her IRA prior to her marriage. As a result, the trial court should have relied on In re Marriage of Leisner, 219 Ill.App.3d 752, 162 Ill.Dec. 277, 579 N.E.2d 1091 (1991), and In re Marriage of Di Angelo, 159 Ill.App.3d 293, 111 Ill.Dec. 394, 512 N.E.2d 783 (1987).
Petitioner's account was valued at $24,446.37 on September 30, 1989, the date she married respondent. That money is petitioner's nonmarital property. 750 ILCS 5/503(a)(6) (West 1996); Leisner, 219 Ill. App.3d at 764, 162 Ill.Dec. 277, 579 N.E.2d 1091; Di Angelo, 159 Ill.App.3d at 296, 111 Ill.Dec. 394, 512 N.E.2d 783. During the next 15 months of her marriage, petitioner contributed $6,257.42 until her participation in the plan ended on December 31, 1990. That money is marital property. See In re Marriage of Smith, 102 Ill.App.3d 769, 772, 58 Ill.Dec. 422, 430 N.E.2d 364 (1981)(stating that to the extent benefits are earned during the marriage they are marital property).
Our analysis does not end here, however. Petitioner's account increased in value. The increase in value attributed to the $24,446.37 of nonmarital property is also petitioner's nonmarital property. 750 ILCS 5/503(a)(7) (West 1996); Leisner, 219 Ill.App.3d at 764, 162 Ill.Dec. 277, 579 N.E.2d 1091; Di Angelo, 159 Ill.App.3d at 296, 111 Ill.Dec. 394, 512 N.E.2d 783. Similarly, the increase in value attributed to the $6,257.42 of marital property is also marital property.
The trial court, however, failed to determine to what extent the increase in value in petitioner's IRA was attributed to the nonmarital property ($24,446.37) and to the marital property ($6,257.42). Instead, the trial court effectively found that the increase in value of the nonmarital property subsequent to the marriage was marital property, and that finding was contrary to law. See Leisner, 219 Ill.App.3d at 764, 162 Ill.Dec. 277, *967 579 N.E.2d 1091. Consequently, we remand this matter to the trial court to determine the increase in value attributed to the marital property and the increase in value attributed to the nonmarital property.
In addition, the trial court must determine the right of reimbursement. The $24,446.37 of nonmarital property and the increase in value attributed to that amount is subject to the right of reimbursement. 750 ILCS 5/503(c)(2) (West 1996); Leisner, 219 Ill.App.3d at 764-65, 162 Ill.Dec. 277, 579 N.E.2d 1091; Di Angelo, 159 Ill.App.3d at 296-97, 111 Ill.Dec. 394, 512 N.E.2d 783. If the increase in value of the $24,446.37 of nonmarital property resulted from a contribution of the marital estate, the marital estate is entitled to reimbursement. Di Angelo, 159 Ill.App.3d at 297, 111 Ill.Dec. 394, 512 N.E.2d 783. Additionally, if the contribution from the martial estate was the result of petitioner's personal effort, the martial estate would be entitled to reimbursement if petitioner's personal effort was significant and resulted in substantial appreciation. Di Angelo, 159 Ill.App.3d at 297, 111 Ill.Dec. 394, 512 N.E.2d 783. Conversely, if the increase in value of the nonmarital property did not result from a contribution from the marital estate, the marital estate in not entitled to reimbursement. Thus, the trial court on remand must also make findings with respect to reimbursement.
Further, the classification of petitioner's IRA on remand will reduce the size of the marital estate. The trial court must divide the marital property "in just proportions." 750 ILCS 5/503(d) (West 1996). Therefore, the trial court must consider what effect its findings on remand have on the distribution of marital property.
Finally, we note that although respondent does not raise the issue of transmutation, petitioner argues that when she deposited the $35,090.99 from the plan into the parties' joint checking account prior to the rollover of those funds into her IRA, there was no transmutation of nonmarital property to marital property. We agree. Section 503(c)(1) provides in part that when marital property and nonmarital property are commingled, resulting in a loss of identity of the nonmarital property, the commingled property is transmuted into marital property. 750 ILCS 5/503(c)(1) (West 1996). In this case, petitioner explained that she only deposited these funds from the plan into the parties' joint checking account because the family was moving from California to Chicago at that time and because that was a hectic time she did not have time to find a suitable investment. Moreover, petitioner properly completed the rollover into her IRA within the required time period. Consequently, there was no transmutation of nonmarital funds into marital funds.

II. MEDICAL EXPENSES
We next reject petitioner's request to reverse the trial court's decision regarding medical expenses. It is within the trial court's sound discretion to order the payment of a health insurance premium, and the trial court's ruling will not be disturbed on review absent an abuse of discretion. See In re Marriage of Schroeder, 215 Ill.App.3d 156, 162, 158 Ill.Dec. 721, 574 N.E.2d 834 (1991). In addition, although there are few discernable guidelines regarding contingent medical expenses not covered by insurance, it is also within the trial court's discretion to order the payment of uncovered and extraordinary medical expenses. See Schroeder, 215 Ill. App.3d at 162, 158 Ill.Dec. 721, 574 N.E.2d 834.
Petitioner testified that she was an independent contractor employed by a public school district as a speech pathologist. Petitioner earned $40 per hour and worked about 35 hours per week for 9 months of the year. Respondent was employed as the manager of a dry cleaner. He was paid $9 per hour and worked 35 to 40 hours per week.
Petitioner's financial resources were superior to respondent's financial resources. At the time of trial, petitioner earned more than respondent, and her prospects of continuing to earn more than respondent were substantial. The trial court was fully aware of the financial position of both parties and the estimated costs of the children's future ordinary and extraordinary medical expenses. Accordingly, the trial court could find that petitioner was in a superior financial position to bear the cost of the children's *968 medical insurance premiums, ordinary medical expenses, and half of the extraordinary medical expenses. See In re Marriage of Thompson, 79 Ill.App.3d 310, 316, 34 Ill.Dec. 342, 398 N.E.2d 17 (1979). We note that both parents have an obligation to financially support their children. In re Marriage of Duerr, 250 Ill.App.3d 232, 238, 190 Ill.Dec. 251, 621 N.E.2d 120 (1993). Therefore, we find that the trial court did not abuse its discretion on this issue.
For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Du Page County and remand the cause for further proceedings consistent with this opinion.
Affirmed in part and reversed in part; cause remanded.
McLAREN and RAPP, JJ., concur.