IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LAIRD V. LAIRD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STEPHEN MICHAEL LAIRD, APPELLEE AND CROSS-APPELLANT,

V.

ANNE DEBORD LAIRD, APPELLANT AND CROSS-APPELLEE.

Filed December 29, 2015.    No. A-15-004.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Douglas R. Switzer and Richard P. Hathaway, of Hathaway Switzer, L.L.C., for appellant.

Angela Dunne and Angela Lennon, of Koenig & Dunne Divorce Law, P.C., L.L.O., for appellee.

IRWIN, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Anne Debord Laird appeals and Stephen Michael Laird cross-appeals from the order of the Douglas County District Court, which dissolved their marriage. On appeal, Anne argues that the district court's requirement that Stephen agree to the children's extracurricular activities before he is required to pay for them is an abuse of discretion, as was the court's division of Stephen's 401K account and failure to divide the equity in a marital vehicle.

On cross-appeal, Stephen challenges the court's award of alimony and attorney fees to Anne. We find no merit to any of the arguments on appeal or cross-appeal and therefore affirm.

- 1 -

BACKGROUND

Anne and Stephen were married in 2005. Two daughters were born during the marriage; one in 2005 and one in 2006. Stephen filed a complaint for dissolution of marriage on July 25, 2013. The parties agreed to share joint legal and physical custody of the children and generally agreed to a parenting plan. They sold the marital home in November 2013 and equally divided the proceeds of the sale. They also divided the balances of their bank accounts between them. However, they were unable to agree on child support, payment of the children's extracurricular activities expenses, division of the marital estate, and alimony. Trial on these issues was held in November 2014.

At the time of trial, Stephen was 45 years old. He had worked for his employer for approximately 18 years and, at the time of trial, held the position of sales manager. He earns a base salary of $210,000 plus approximately $25,000 to $30,000 in annual commission.

Stephen contributed to a 401K account through his employer prior to the marriage. At the time the parties married, the balance of the account was $73,560; by the time the parties separated in August 2013, the balance had increased to $363,897.26. The account is comprised of stocks. Stephen testified that he follows the stock market and understands how it works. According to Stephen, during the course of the marriage, the "S&P" grew at 40 percent, and he was aware that his stocks performed closely to the S&P because he tracked them several times per week. Anne agreed that Stephen regularly consulted financial pages and the stock market to track the value of his 401K. He would tell her if the 401K lost or gained value every night when he came home from work. Thus, according to Stephen's estimation, the beginning balance of $73,560 would have increased to approximately $101,852 during the marriage. Stephen agreed that this estimation was an "educated guess" based on his consulting "Google Finance" a "couple times per week" during the marriage.

At the time of trial, Anne was 42 years old. She has worked in the clothing industry for 17 years as a salesperson, merchandiser, and buyer. When she and Stephen married, Anne was operating her own clothing business. The business closed in 2010, and Anne has been working at a clothing boutique since that time. She works 25 to 30 hours per week and testified that she could earn $35,000 per year if she worked full time.

Prior to the marriage, Anne earned a degree in finance. She continued working throughout the marriage, and only took a few weeks of maternity leave following the birth of each child. Stephen's mother, babysitters, and nannies helped care for the children during the marriage while Anne and Stephen worked.

Anne estimated that her expenses approximate $8,729 per month. She testified that the expenses for the children exceed $1,000 per month and are only going to increase as they get older. The girls both participate in a swim club two to three nights per week, year-round, which costs $200 to $300 per month. They also play volleyball, with the older daughter playing on a club team, and play tennis at least once per week. Anne joined a country club so the girls could participate in swimming and tennis, which costs $190 per month for dues and an additional $170 per month for swim team. Private tennis lessons at the country club cost $350 or $400.

Stephen asked the district court to set a limit on the expenses for the children's extracurricular activities. He said that financial matters caused significant disagreement during the

marriage because Anne and he have differing spending philosophies. He is more of a saver and views money as something "to take care of rather than find out how fast [they] can get rid of it," and according to Stephen, Anne has the opposite viewpoint. Because of this, Stephen was concerned that if the court ordered Anne and him to share expenses, the spending "would get out of control" and result in unnecessary or redundant purchases. Thus, he requested that the court use the sole custody worksheet in order to calculate child support so that he would pay more support each month but not order expense sharing to reduce the chance for disagreement between Anne and him; in the alternative, Stephen asked that if the court used the joint custody worksheet to calculate child support, it limit the amount of an expense so that the parties would have to agree to it before being required to pay for it.

The district court entered a decree dissolving Anne and Stephen's marriage on December 5, 2014. The court approved the parties' custody arrangement and parenting plan. Using the joint custody worksheet, the court calculated Stephen's child support obligation at $1,636 per month for two children and $1,189 for one child. The court further ordered that all reasonable and necessary direct expenditures made solely for the children such as clothing, school expenses, extracurricular activities, and employment-related child care expenses be allocated based on the proportion of each parent's contribution reflected in the child support worksheet. With respect to Stephen's request for a limit on extracurricular activities expenses, the court found that the evidence clearly showed that the children are active in extracurricular activities "above and beyond what the child support guidelines contemplate." Therefore, in considering what constitutes a reasonable expense associated with extra-curricular activities, the court added the following provision: "Sporting or other activities, outside sports or activities directly associated with school, must be agreed to before a party is responsible for their proportion of the expenses. This includes fees for Country Club memberships."

The court found certain property to be nonmarital and offset it to the appropriate party. Stephen was awarded a 2007 Chevrolet Tahoe, valued at $24,890 with a lien of $10,683. The court also divided the marital debts in a manner that will be explained in greater detail below. With respect to Stephen's 401K, the court found that the balance at the time of the marriage was $73,561 and the balance as of the date of separation was $363,897. It concluded that the estimated appreciation on Stephen's premarital retirement monies was approximately $28,291; thus, the court offset $101,852 as Stephen's premarital portion and awarded each party 50 percent, or $131,023, of the remaining balance.

Stephen was ordered to pay alimony to Anne of $2,000 per month for 72 months, including those months for which alimony had already been paid under a previously entered temporary order. Finally, the court ordered Stephen to pay $7,500 of Anne's attorney fees. Anne timely appeals to this court and Stephen cross-appeals.

ASSIGNMENTS OF ERROR

On appeal, Anne assigns that the district court erred in (1) creating an improper conditional provision for the payment of extracurricular and other expenditures made solely for the children, (2) allocating to Stephen $28,291 from his 401K account, and (3) allocating all of the equity in the Chevrolet Tahoe to Stephen.

On cross-appeal, Stephen assigns that the district court erred in awarding Anne alimony and attorney fees.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

*Expenses for Extracurricular Activities.*

Anne argues that the district court abused its discretion in creating an improper conditional provision for the payment of the children's extracurricular activities and that the child support guidelines require that parents pay their proportionate share of all of their children's expenses. We find no merit to Anne's arguments.

Anne argues that the provision is a void conditional clause, relying upon *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006). In *Strunk v. Chromy-Strunk*, the dissolution decree contained a settlement agreement providing the former husband with an additional $75,000 judgment if, during his lifetime, the former wife voluntarily or involuntarily disposed of the marital property granted to her. The Nebraska Supreme Court explained that a "judgment" is a court's final consideration and determination of the respective rights and obligations of the parties to an action as those rights and obligations presently exist. *Id*. Orders purporting to be final judgments, but that are dependent upon the occurrence of uncertain futures events, do not necessarily operate as "judgments" and may be wholly ineffective and void as such. *Id*. A conditional judgment may be wholly void because it does not "perform in praesenti" and leaves to speculation and conjecture what its final effect may be. *Id*.

We find the language of the decree in the present case does not constitute a conditional judgment. The provision determines the obligations of the parties as they presently exist to the effect that if the parties agree to certain expenses, they are required to pay their proportionate share. This requirement does not look to the future in an attempt to judge the unknown, as conditional judgments do. Rather, the only unknown is the actual amount of the expense, an element that is always unknown when divorcing parties are ordered to share the expenses of their children.

We further note that Nebraska law requires that parents pay a proportionate share of the *reasonable* and *necessary* expenses for their children. Section 4-212 of the Nebraska Child Support Guidelines provides that if child support is determined under this paragraph, all reasonable and necessary direct expenditures made solely for the children such as clothing and extracurricular activities shall be allocated between the parents, but shall not exceed the proportion of the obligor's parental contributions. In addition, Neb. Rev. Stat. § 42-364.17 (Reissue 2008) mandates that a decree of dissolution incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care,

- 4 -

extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations, but it does not require that each parent pay a proportionate share of extraordinary expenses.

Here, in accordance with Nebraska law, the district court ordered that each party pay its proportionate share of the reasonable and necessary expenses for the children, including clothing, school expenses, extracurricular activities, and employment-related child care. However, it found that the children are active in extracurricular activities above and beyond what is contemplated by the child support guidelines, and therefore, the court set the financial arrangements for these "extraordinary expenses of the child[ren]" as required by § 42-364.17 by requiring the parties' agreement to the expenses.

The Supreme Court upheld a similar provision in a modification order in *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013). There, the trial court modified the parties' dissolution decree such that the father would be responsible for a portion of extraordinary expenses, including extracurricular activities, only if he agreed to the expenses. When the mother challenged this provision on appeal, the Supreme Court accorded weight to the district court's reliance on testimony that the mother incurred extraordinary expenses solely to create financial strain for the father and found no abuse of discretion in requiring the father's approval.

While the evidence in the present case does not support a finding that the purpose of these extracurricular activities is to increase Stephen's financial responsibility, Stephen testified that Anne and he have very different financial spending philosophies, which caused arguments during the marriage. Namely, she is a spender and he is a saver. Stephen worried that if Anne and he were ordered to share all of the children' expenses, the spending "would get out of control." Given the Nebraska Supreme Court's approval of a similar provision in *Caniglia v. Caniglia*, *supra*, we cannot find that it was an abuse of discretion to require the parties to agree to the expenses for extracurricular activities outside of those associated with school.

*Appreciation on Stephen's 401K.*

Anne asserts that the district court abused its discretion in offsetting to Stephen an amount characterized as appreciation on the premarital portion of his 401K. We disagree.

In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 2008). Equitable property division under § 42-365 is a three-step process. The first step is to classify the parties' property as marital or nonmarital. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015).

As a general rule, all property accumulated and acquired by either spouse during a marriage, including pensions and retirement plans, is part of the marital estate. *Id*; Neb. Rev. Stat. § 42-366(8) (Reissue 2008). Generally, amounts added to and interest accrued on such pensions or retirement accounts which have been earned during the marriage are part of the marital estate. *Id*. However, contributions made before marriage or after dissolution are not assets of the marital estate. See *id*. Likewise, where the appreciation in the value of premarital property was due to market forces and not due to any improvements made by the parties, it should be set aside and treated as nonmarital property. See *Shafer v. Shafer*, 16 Neb. App. 170, 741 N.W.2d 173 (2007). See also *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 734, 325 N.W.2d 832, 834 (1982) (where appreciation of a wife's separate asset was due principally to inflation and market forces and not

to any "significant efforts" by the husband, the appreciation should not have been included in the marital estate).

In *Coufal, supra*, the husband participated in an employment-related retirement account prior to the marriage, which earned statutorily required interest during the marriage. The issue on appeal was whether the increase in value of the premarital portion of the retirement account should be considered as part of the marital estate.

In reaching its decision, the Supreme Court observed that other courts have concluded that an increase in value of such property during the marriage is not a marital asset when it is not caused by marital efforts or funds, noting that this dichotomy in the appreciation of separate property has been referred to as "active" appreciation versus "passive" appreciation. *Coufal*, 291 Neb. at 383, 866 N.W.2d at 78. Thus, in order to determine what portion of the husband's retirement account was nonmarital property, the court examined to what extent the appreciation in the premarital portion of the account was caused by the efforts of either spouse.

The *Coufal* court determined that because the increase in value of the premarital portion of the husband's account was not derived from contributions by the parties during the marriage and the increase in value of the premarital portion was readily identifiable and traceable to the premarital portion, the increase in value should not be included in the marital estate. The court noted that courts in other jurisdictions have reached similar conclusions. See e.g., *Baker v. Baker*, 753 N.W.2d 644 (Minn. 2008) (appreciation in premarital portion of husband's retirement account was separate property where husband did not devote significant effort to managing the fund or to generating an increase in the account); *In re Marriage of Raad*, 301 Ill.App.3d 683, 704 N.E.2d 964, 235 Ill. Dec. 391 (1998) (increase in value of premarital portion of wife's retirement account was nonmarital property, but contributions during the marriage and subsequent appreciation in value of that amount were marital property).

Further, in *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008), the Nebraska Supreme Court approved the division of the marital portion of a savings plan and the appreciation related thereto, to the exclusion of the premarital portion and its appreciation. Prior to the marriage in *Sitz*, the husband and wife entered into a premarital agreement whereby they agreed to "set apart" the property they each had accumulated prior to their marriage. At the time of the marriage, the husband owned a savings plan with a value of $28,631. The husband and his employer contributed to the plan throughout the time of the marriage. Following the dissolution trial, the trial court awarded the husband the premarital portion of the savings plan along with the interest on such amount. Because the court had no evidence as to earnings on the investment, the court applied a rate of return of 6 percent per year and determined that the approximate earnings on that investment during the marriage were $52,563. The value of the savings plan at the time of separation was $371,817. Thus, the trial court deducted $52,563 from the total to obtain the marital value of the plan and awarded the wife 50 percent of that portion. The treatment of the premarital and marital portions of the savings plan and the corresponding calculations and division were upheld on appeal.

In the present case, the increase in value of the premarital portion of Stephen's 401K account was due solely to changes in the stock market. He testified that the plan administrator chose the stock options from which Stephen could select for his 401K and that he did not change the stocks, at least during the final 4 or 5 years of the marriage. Anne and Stephen agreed that

Stephen closely followed the stock market and was aware of the changing value of his retirement account. During the course of the marriage, the "S&P" grew at 40 percent, and Stephen testified that his stocks performed closely to the S&P. Thus, he estimated that the premarital portion of his 401K account increased to approximately $101,852 during the marriage.

Anne complains that Stephen's testimony was the only evidence of the increase in value and that it was merely an "educated guess." Brief for appellant at 12. At trial, when Stephen was asked how much his 401K grew from 2005 to 2013, Anne's counsel objected on foundation. Without ruling on the objection, the court then asked Stephen how he calculated the growth, and Stephen responded that he tracked the S&P and observed its growth rate between the time of the marriage and the time of separation. Anne's counsel made no further objection to this testimony.

If, when evidence is offered, the opposing party fails to object or to insist upon a ruling on an objection to the introduction of such evidence, and otherwise fails to raise the question of its admissibility, the opposing party waives whatever objection may have existed, and the evidence is in the record for consideration the same as other evidence. See *In re Interest of Kindra S.*, 14 Neb. App. 202, 705 N.W.2d 792 (2005). Therefore, any objection Anne has to the admissibility of Stephen's estimated value of the growth of his 401K has not been properly preserved for appeal, and his testimony is in the record for the trial court's consideration.

Further, we agree with Anne that Stephen's testimony was uncontroverted as to the amount by which his premarital portion increased. But, as noted above, this testimony was properly to be considered by the district court, and it was subject to the court's determination of credibility. Although in a divorce action the case is reviewed on appeal de novo, the appellate court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. See *Logan v. Logan*, 22 Neb. App. 667, 859 N.W.2d 886 (2015). Obviously, a trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. *Id*. See also *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015)(the weight to be given a witness' testimony is a question for the trier of fact). We accord weight to the fact that the district court accepted Stephen's testimony as to the estimated appreciation on the premarital balance of his 401K account. Accordingly, we find that the district court did not abuse its discretion in offsetting this amount to Stephen as nonmarital property.

*Equity in Chevrolet Tahoe.*

Anne contends that the district court abused its discretion in failing to divide the equity in the Chevrolet Tahoe between her and Stephen. Because each party received between one-third and one-half of the marital estate, we find no merit to this argument.

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

- 7 -

We agree with Anne that the district court failed to divide the equity in the Tahoe, which totaled approximately $14,200. However, the entirety of the marital estate was equitably divided between the parties. Prior to trial, Anne and Stephen equally divided the proceeds from the sale of the marital home, and each party received $8,130. They also divided the balances of their checking and savings accounts at the time they separated, with Anne receiving $15,000 out of the $24,006.91 total. The parties received a tax refund after separation, which they divided equally so that they each received $4,180.50.

In the decree, Anne was awarded 50 percent of the marital portion of Stephen's 401K, which equaled $131,023. Stephen received the 2007 Chevrolet Tahoe, and Anne received her vehicle, but because it had been leased after the parties separated, it is not considered a marital asset. The decree also recognized that the parties divided their household goods and personal effects and each party was awarded the property currently in his or her possession. No value was assigned to this property.

With regard to the marital debts, Stephen was ordered to pay two lines of credit totaling $548.53; a Chase credit card with a balance of $4,420.31; an American Express credit card with no balance at the time; and the new furnace for the marital home which cost $3,219. Anne was ordered to pay a Nebraska Furniture Mart account with a balance of $1,278.32; a Gap credit card with a balance of $2,696.69; a Chase credit card with a balance of $3,259.86; and a She-La credit card with a balance of $324.43.

Without considering the value of the household goods and personal effects, the total value of the marital estate was $309,126.77. Anne received $150,774.20, or 49 percent. Stephen received $158,352.57, or 51 percent.

Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). We conclude that where Anne was awarded 49 percent of the marital estate and Stephen 51 percent, such a division is within the general rule and was not an abuse of discretion. We accordingly conclude that the district court's failure to divide the equity in the Tahoe was not an abuse of discretion.

*Alimony.*

On cross-appeal, Stephen argues that the district court abused its discretion in awarding alimony to Anne. In light of our standard of review, we find no merit to this argument.

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Marcovitz v. Rogers,* 267 Neb. 456, 675 N.W.2d 132 (2004). The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.* In awarding alimony, a court should consider, in addition to the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2008), the income and earning capacity of each party as well as the general equities of each situation. *Marcovitz, supra.* The criteria in § 42-365 include

> the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability

of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

Alimony should not be used to equalize the incomes of the parties or to punish one of the parties; however, disparity in income or potential income may partially justify an award of alimony. *Marcovitz, supra.* The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support. *Gress v. Gress,* 274 Neb. 686, 743 N.W.2d 67 (2007). In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Hosack v. Hosack,* 267 Neb. 934, 678 N.W.2d 746 (2004).

Many of the usual factors supporting an award of alimony are not present in the case at hand. We acknowledge Stephen's argument that the primary purpose of alimony, to assist an ex-spouse in re-entering the workforce or reestablishing employment, is not present in the instant case where Anne maintained employment in her chosen field during the entire marriage. We also recognize that despite Anne's emphasis on the parties' income disparity, alimony is not to be used solely to equalize the incomes of the parties. However, income equalization may partially justify an award of alimony. Anne also argues that she is entitled to alimony in order to assist her in maintaining the same lifestyle she enjoyed during the marriage. The specific statutory considerations for alimony set forth in § 42-365 do not mention the ability of the supported party to maintain a lifestyle similar to that enjoyed during the marriage, but it is a factor that may be considered. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

Despite the circumstances of this case, we find that the record supports the district court's decision. Stephen earns a significantly higher income than Anne, and she will now have her own expenses associated with maintaining her own residence. She has been in the clothing business for 17 years and has no plans to seek alternative employment. Alimony of $2,000 per month is not likely to place a great burden on Stephen, given his income.

The record is clear that Stephen has worked hard to reach the financial success he has achieved and lives his life more frugally than Anne. We understand his frustration with Anne's financial philosophy, including the extent of her claimed monthly expenses and desire to maintain a country club membership despite her limited income and earning capacity. However, we are mindful of the fact that our role is not to determine whether we would have awarded the same amount of alimony as did the trial court, but whether the trial court's award constitutes an abuse of discretion. After reviewing the record de novo, we cannot say that the award deprives Stephen of a substantial right or just result. Accordingly, we conclude that the district court did not abuse its discretion in awarding Anne alimony in the amount of $2,000 for a total of 72 months.

*Attorney Fees.*

Stephen argues that the trial court abused its discretion in ordering that he pay a portion of Anne's attorney fees. We disagree.

In an action for dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008). The award of attorney fees depends

on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. *Id.*

In the present case, there were multiple issues remaining for the court's determination, including child support, property division, and alimony. Anne was successful in securing the amount of child support she requested, nearly half of the marital estate, and a substantial amount of alimony. As noted above, Anne's income and earning capacity are significantly lower than Stephen's, and they each incurred approximately the same amount of attorney fees during the pendency of the case. We therefore conclude the trial court did not abuse its discretion in ordering Stephen to pay $7,500 towards Anne's attorney fees.

## CONCLUSION

We find no merit to any of the issues raised on appeal. We therefore affirm the district court's decision regarding division of extracurricular activities' expenses, property division, alimony, and attorney fees.

AFFIRMED.