IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

SUTTON V. SUTTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHARLENE MARIE SUTTON, NOW KNOWN AS CHARLENE MARIE KISS, APPELLEE,
V.
JOHN JOSEPH SUTTON, JR., APPELLANT.

Filed April 2, 2013.    No. A-11-1110.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed as modified.

Matthew S. McKeever, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellant.

John A. Kinney and Jill M. Mason, of Kinney Law, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

## I. INTRODUCTION

John Joseph Sutton, Jr., appeals from the order of the district court for Douglas County which dissolved his marriage to Charlene Marie Sutton, now known as Charlene Marie Kiss. John challenges the valuation and determination of marital equity in certain parcels of real estate, the failure to include a certain marital debt in the division of marital debts, the valuation and division of personal property, and the finding that he failed to comply with pretrial orders. Following our de novo review, we find that the district court erred in connection with its determination of the equity in one parcel of real estate, its failure to include a debt in the division of the marital estate, and its determination of the amount John owed under the temporary order. We modify the decree in these respects.

- 1 -

## II. BACKGROUND

### 1. PARTIES

The parties were married in April 2004. No children were born of the marriage, but both parties had a child from a prior relationship. At the time of the parties' marriage, Charlene worked as an accounting manager at the Omaha World-Herald (OWH), where she had been employed for 12 years. John was employed in a company's collection department.

### 2. PLEADINGS AND PRETRIAL PROCEEDINGS

On September 16, 2010, Charlene filed a complaint for dissolution of marriage in the district court. John subsequently filed a pro se voluntary appearance. The district court entered a temporary order on December 3. Among other things, the court ordered John to pay Charlene $907 per month ($1,000 per month less a $93 credit for Charlene's health and dental insurance), commencing November 4, for the payment of debt and maintenance related to the parties' marital residence and rental properties. The court also ordered John to provide documentation of his use of $3,000 he took from the parties' rental account.

### 3. TRIAL

Trial was held on September 22 and October 7, 2011. Charlene appeared with her attorneys, and John appeared pro se. Testimony was given by both parties, and numerous exhibits were received in evidence. We summarize only the relevant evidence as necessary to address the issues on appeal.

### (a) Charlene's OWH Stock

Charlene acquired OWH stock during her employment. In 2007, Charlene owned a total of 5,850 shares of stock of which 1,620 shares had been acquired prior to this marriage. Charlene sold her OWH stock in 2007 when she left her employment, realizing net proceeds from the stock distribution in the sum of $170,418.15. These funds were ultimately used in connection with several real estate transactions discussed below. The district court determined that 56 percent of the stock proceeds were marital and that the balance of the proceeds was Charlene's premarital property. Neither party disputes this finding in this appeal. Therefore, we need not detail the evidence regarding this calculation further.

### (b) Real Estate

There was evidence concerning various marital and nonmarital real properties owned by the parties, and we have set forth the evidence concerning only those properties relevant to the issues raised by John on appeal.

#### (i) Plaza Circle

The Plaza Circle property in Omaha, Nebraska, was the parties' marital residence. The parties purchased the Plaza Circle property in August 2009 for $315,000. Charlene made a contribution of $71,579.29 from her OWH stock proceeds toward the downpayment on the Plaza Circle property. Charlene obtained an appraisal of the property in January 2011, which determined that the fair market value of the property was $280,000. The approximate mortgage

balance on the marital residence as of August 25, 2011, was $224,478.70, with $1,530.02 in escrow.

John testified that the Plaza Circle property was worth at least $325,000. He did not, however, offer a current appraisal to support the asserted value. John submitted exhibits including a July 2009 appraisal valuing the property at $315,000 at the time the parties purchased the property, a personal financial statement from February 2010 valuing the residence at $375,000, and information from the Douglas County assessor's Web site showing the assessed value of the property in 2011 was $287,800. Charlene testified upon John's cross-examination of her that the parties came up with the information in the personal financial statement together and that it would have been a guess.

### (ii) Ponderosa Road

The parties purchased a vacant lot on Ponderosa Road, in Gretna, Nebraska, in March 2006 for $96,770. In purchasing this property, the parties obtained two loans. The first loan in the principal amount of $91,770 was an interest-only loan with a maturity date of March 16, 2008. The second loan was for the earnest deposit with a principal balance of $5,000. The parties paid the second loan in full on March 3, 2006. In 2008, the parties renegotiated the maturity date of the first loan from March 16, 2008, to March 16, 2010. In February and March 2010, Charlene paid off the first loan, using a total of $85,839.19 of her OWH stock proceeds and $10,000 from her individual checking account. Charlene valued the Ponderosa Road property at $42,629 based on the 2010 tax assessed value of the lot and her personal opinion. John did not dispute Charlene's valuation of the Ponderosa Road property, but he did offer documents which showed that the 2011 Sarpy County tax assessed value of the lot was $41,219.

### (iii) Wirt Circle and North 65th Avenue

The parties purchased rental property located on Wirt Circle in Omaha. Charlene obtained an appraisal of the property showing that its fair market value was $108,000. At the time of trial, the outstanding mortgage balance on the Wirt Circle rental property was $70,869. Charlene testified that in order to avoid having to obtain private mortgage insurance, the parties took a second mortgage on John's premarital residence located on North 65th Avenue in Omaha and used the funds to purchase the Wirt Circle property.

John did not obtain an appraisal of the Wirt Circle property, but he testified that its fair market value was $85,000. The only evidence John provided in support of his position was information from the Douglas County assessor's Web site, valuing the property at $110,000 in 2011. John testified that the district court should consider the second mortgage of approximately $21,269 on the North 65th Avenue property in determining the value of the Wirt Circle property, since this mortgage was used to purchase the Wirt Circle property. John offered exhibits in an attempt to substantiate the amount of the mortgage, including a document from a credit union showing a second loan on the North 65th Avenue property in the balance of $16,950.25 as of July 31, 2011.

*(iv) Bauman Avenue*

Charlene assisted her son in purchasing real property located on Bauman Avenue in Omaha in January 2008. Charlene contributed $14,801.78 from her OWH stock proceeds toward the downpayment. According to Charlene, her son pays the mortgage each month and he claims the home on his taxes each year. Charlene considers the property to be her son's and considers herself merely a coborrower on the loan. John did not claim that the Bauman Avenue property should be considered marital property and did not testify to a value of the property, although he did offer an exhibit that includes what appears to be a page of taxpayer information about the property.

### (c) Personal Property

Charlene provided exhibit 42, identifying the personal property John removed from the Plaza Circle residence in December 2010. Charlene assigned a fair market value to that property based on her research in a commercial tax preparation software program and determined that the value of personal property in John's possession was $5,946. Charlene also had the personal property in her possession appraised by a local auction company, which found that the value of personal property in Charlene's possession was $3,864.

John provided an extremely detailed listing of personal property in exhibit 46, but this exhibit did not include any values for the property identified. The court allowed John to provide a posttrial exhibit to include his alleged values of personal property, which was later admitted as exhibit 51. Through his affidavit included in exhibit 51, John testified that he disagreed with Charlene's valuation of the personal property in her possession. John denied having $2,680 worth of the items identified by Charlene as being in his possession, but he did not identify which items were not in his possession. John stated that there may be items listed on both exhibit 42 and exhibit 46 that appear to be identical, but he did not identify any specific duplicated items. John also testified that he revised exhibit 46 to include values for the personal property he alleged was left in Charlene's possession when he moved out of the marital residence in December 2010. Finally, John testified that certain furniture purchased and certain items in the craftroom at the Plaza Circle property should each be valued at the purchase price because they were purchased 12 to 16 months before he left the residence in December 2010. In addition to John's affidavit, exhibit 51 includes an updated listing of the items John previously listed in exhibit 46, showing John's values for this personal property.

### (d) Compliance With Pretrial Orders

On the first day of trial, which was September 22, 2011, Charlene testified that John failed to pay her the $907 per month he was ordered to pay in November and December 2010 and from July through September 2011. John did not dispute his failure to make such payments and offered no objection to Charlene's documentations showing this failure. There was no further evidence presented on this issue on the second day of trial, which occurred on October 7.

John presented evidence in an attempt to account for his use of $3,000 taken from the parties' rental account. John provided The Home Depot receipts from June 2011 for $5.05 and $8.70, which he claimed were for repairs on the parties' rental properties. The exhibit also included a June 2011 Menards receipt showing the purchase of items for $70.52 and the return of

items worth $36.34, for a net amount of $34.18. John also provided a receipt from S & F Services dated July 22, 2011, for $4,500 for installation of a furnace and air conditioner for the Wirt Circle rental property. John testified that the tenant complained about the furnace and air conditioner a few years prior to John's taking action on the complaint. John testified that the funds for the purchase came from his personal checking account.

### 4. DECREE OF DISSOLUTION

On November 30, 2011, the district court entered a decree dissolving the parties' marriage. With respect to Charlene's OWH stock, the court determined that 56 percent of the stock proceeds were marital and applied that percentage in determining the marital portion of assets purchased using OWH stock proceeds. The court valued the various real properties owned by the parties and determined their marital equities, which we discuss in further detail below. The court awarded each party the personal property in their respective possession, accepting the values adduced by Charlene as most persuasive. Finally, the court found that John failed to make some of the temporary payments to Charlene and ordered John to pay Charlene $5,442. The court also found that John had failed to account at trial for the $3,000 taken from the parties' rental account. Accordingly, the court attributed $3,000 to John in its division of the marital estate. The court included a chart summarizing the division of the marital estate and concluded that Charlene should make an equalization payment to John of $3,739. John subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

John assigns 10 errors in this appeal, which we have summarized and restated into 4. John asserts that the district court erred in (1) the valuation of and determination of marital equity in three parcels of real estate, (2) its failure to find that a second mortgage on John's premarital real estate was a marital debt, (3) the valuation and division of personal property, and (4) its determination that John failed to comply with pretrial orders.

## IV. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 825 N.W.2d 767 (2013).

When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Keig v. Keig*, 20 Neb. App. 362, ___ N.W.2d ___ (2012).

## V. ANALYSIS

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The

second step is to value the marital assets and liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004).

### 1. REAL ESTATE

John asserts that the district court erred in its valuation and determination of the marital equity in three different parcels of real estate: the Plaza Circle property, the Ponderosa Road property, and the Bauman Avenue property.

### (a) Plaza Circle Property

John makes several assignments of error in connection with the Plaza Circle property. We address each in turn.

John first asserts that the district court abused its discretion in finding that the fair market value of the Plaza Circle property, awarded to Charlene, was $280,000. The court accepted the fair market value of $280,000 as shown in the January 2011 appraisal obtained by Charlene. John argues that this appraisal incorrectly showed the property had only wellwater and used properties in different cities, counties, and school districts as comparison properties. However, John did not adduce evidence to show how such alleged inaccuracies affected the ultimate valuation of the property in this appraisal. Although John testified that he thought the Plaza Circle property was worth at least $325,000, he did not offer a current appraisal to support the asserted value. John did offer as exhibits a July 2009 appraisal obtained in connection with the parties' purchase of the property valuing the property at $315,000, a personal financial statement prepared by the parties in February 2010 valuing the residence at $375,000, and information from the Douglas County assessor's Web site showing the assessed value of the property in 2011 was $287,800. There was conflicting evidence in the record regarding the value of this property, and the court accepted the most current valuation contained in an appraisal from a certified real estate appraiser. We find no abuse of discretion in this regard.

John next asserts that the district court erred in calculating the marital equity of the Plaza Circle property. The court calculated the equity in the property by subtracting the mortgage balance of $227,009 from the fair market value of $280,000 to arrive at an equity balance of $52,991. The court then determined the marital portion of the equity by multiplying this figure by .56, the percentage of the downpayment from Charlene's OWH stock proceeds that was considered marital, to arrive at marital equity of $29,674.

John argues that this calculation was wrong in two respects. First, John argues that the correct mortgage loan balance was $225,478.70 instead of $227,009. The mortgage statement in the record shows a principal mortgage balance of $225,478.70 and an escrow balance of $1,530.02, which together amount to the rounded figure of $227,009. We agree with John that the escrow balance of $1,530.02 should not be included in the mortgage balance figure and that the correct mortgage balance should have been $225,479 (as rounded), such that the equity in this property is $54,521.

Second, John argues that the calculation of the marital equity failed to recognize the loan reduction made through the joint efforts of the parties, but, rather, was calculated solely on the basis of the downpayment made from Charlene's OWH stock proceeds. In his brief, John offers a rather complicated alternative calculation for the marital equity. Given the fact that the current equity in the property of $54,521 is less than the downpayment of $71,579.29, we find no error in the method used by the district court in determining the marital equity.

Finally, John asserts that the district court made a typographical error in connection with the Plaza Circle property. While the district court calculated the marital equity in this property to be $29,674, it recorded the amount of $27,674 into its chart summarizing the distribution and award of marital assets. We agree that this likely represents a typographical error. In order to correct the mortgage balance and this typographical error, we have modified the marital asset distribution chart below to correctly reflect the marital equity in the Plaza Circle property as $30,532 ($54,521 × .56).

### (b) Ponderosa Road Property

John asserts that the district court incorrectly calculated the marital equity of the Ponderosa Road property, which property was awarded to Charlene.

This property, a vacant lot, was purchased in March 2006 for $96,770. A $5,000 loan for the earnest money was paid jointly by the parties. The primary loan in the principal amount of $91,770 was paid off in February and March 2010 from Charlene's OWH stock proceeds and funds from her individual checking account. The district court accepted Charlene's valuation of the Ponderosa Road property using the 2010 assessed value of $42,629 and applied the multiplier of .56 to arrive at a marital equity of $23,872. John does not dispute Charlene's valuation, although at trial he offered the 2011 assessment record showing the value of the lot as $41,219. John again provides in his brief on appeal a somewhat complicated formula for determination of the equity in this property in an attempt to include the parties' joint reduction of debt, and he arrives at an equity figure of $25,875. Because the amount of the debt payment far exceeds the current value of the lot, and the bulk of the debt was paid from Charlene's OWH stock, we find no error in the court's calculation of the equity in this property.

### (c) Bauman Avenue Property

John asserts that the district court erred in calculating the equity in the Bauman Avenue property. The court calculated the marital interest in the downpayment for this property by multiplying $14,801.78 by .56, arriving at the figure of $8,288, which it included in the marital asset chart.

Charlene assisted her son in purchasing this property by contributing $14,801.78 from her OWH stock proceeds toward the downpayment. The record shows that Charlene was merely a coborrower on the loan and that her son has made all of the monthly mortgage payments. She considers the property to be her son's property.

John does not argue that this real estate should be considered marital property nor does he disagree with the calculation of the marital interest in the downpayment. Rather, he argues that there is an additional marital interest in the reduced encumbrance on this property which the court failed to include in the marital estate. Because the record shows that any reduction in the

mortgage on this property was due to payments made by Charlene's son and not due to the efforts of the parties, John's argument is without merit.

## (d) Conclusion Regarding Real Estate

In summary, we find that the district court did not abuse its discretion in the valuation and division of the real estate properties above, with the exception of the marital equity in the Plaza Circle property, which we have modified to $30,532, as shown in the chart below.

## 2. SECOND MORTGAGE ON NORTH 65TH AVENUE PROPERTY

John asserts, as summarized, that the district court abused its discretion in its failure to include as a marital debt the second mortgage loan on his premarital North 65th Avenue property, which was used in the purchase of the parties' Wirt Circle rental property. The court determined that the value of the Wirt Circle property was $108,000, less the outstanding mortgage balance of $70,869, for a resulting equity value of $37,131. The court awarded this property to John. John does not dispute the valuation of the property. Rather, John takes issue with the court's finding that there was no evidence offered as to any remaining encumbrance created by the second mortgage on this property.

Charlene's testimony confirmed that the parties obtained a second mortgage on John's premarital residence on North 65th Avenue and used the funds to purchase the Wirt Circle property. John testified that this second mortgage should be considered in the determination of the value of the Wirt Circle property. John offered into evidence a credit union statement dated July 31, 2011, which references "Loan # 2 [a certain address number] N 65th AVE OMA" and shows a balance of $16,950.25. Based upon this record, we agree with John that the court erred in failing to include the second mortgage on John's premarital property in the sum of $16,950 as a marital debt to be included in the division of property. Marital debt includes those obligations incurred during the marriage for the joint benefit of the parties. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). We therefore modify the decree to include the second mortgage on John's premarital real estate in the division of the marital estate, and we assign this debt to John. This modification is contained in the chart below.

## 3. PERSONAL PROPERTY

The district court found Charlene's evidence of the personal property items possessed by each party and the value of those items to be most persuasive. The court awarded each party the personal property in his or her possession, except the court noted that John continued to maintain personal property in the Plaza Circle property outbuilding and ordered him to remove that personal property in a timely manner. While the court found that the value of Charlene's personal property was $3,864 and John's personal property was $5,946, the court did not include the personal property valuation amounts in its chart outlining the calculation of the marital estate. The court noted John's request in his final argument that certain items of property be returned to him as his premarital or inherited property. The court found that John did not offer any evidence allowing the court to determine whether this property was premarital or inherited.

John first asserts that the district court abused its discretion in failing to award John his premarital possessions which Charlene acknowledged were in her possession. Specifically, John

argues that a purple couch, a 6-foot lighted Christmas tree, a wooden mailbox postage stamp holder, a blue reclining couch, and a cherrywood table and sofa were acknowledged by Charlene as being in her possession and should have been awarded to John as his premarital or inherited property.

If premarital property can be identified, it is typically set off to the spouse who brought the property into the marriage. *Charron v. Charron*, 16 Neb. App. 724, 751 N.W.2d 645 (2008).

At trial, John submitted exhibit 46, a lengthy and detailed list of personal property. On this exhibit, John listed certain items as being his premarital or inherited property. Charlene marked exhibit 46 at trial by writing a "W" next to items in her possession and by highlighting John's nonmarital items in yellow.

Charlene acknowledged that all of the foregoing items were in her possession and were John's premarital property, with the exception of the purple couch which is in her possession. However, in her brief on appeal, Charlene agreed that should these six items be awarded to John, he may pick them up from her in a timely manner. We conclude that these six items should be awarded to John as his nonmarital property, and we modify the decree accordingly.

John next asserts that the district court abused its discretion in failing to include in the marital estate the value of items of personal property that Charlene acknowledged were in her possession but were not listed on her appraisal evidence. In this assignment of error, John complains that there were many personal property items Charlene acknowledged via exhibit 46 as being in her possession, but which were not included in her personal property appraisal, exhibit 43. Essentially, John argues that the court erred in its valuation of the parties' marital personal property.

The court accepted Charlene's valuations of the parties' marital personal property and found her evidence of items possessed by each party most persuasive. Further, a perusal of John's personal property lists, exhibits 46 and 51, shows that he went into far greater detail in listing miscellaneous items such as clothing, kitchenwares, and a multitude of other household items, including food items, which were understandably omitted in Charlene's appraisal. Given the conflicting evidence on these issues, we find no abuse of discretion in the court's identification and valuation of the parties' respective personal property.

John also argues that he should have been awarded a certain oak entertainment center as his premarital property. John listed this item on exhibit 46 as being his premarital property, and Charlene acknowledged the entertainment center as John's premarital property. She also marked the entertainment center with the letter "O" to indicate that it was located in the outbuilding on the Plaza Circle property. The district court ordered John to make arrangements with Charlene to remove his personal property from the outbuilding. The court did not abuse its discretion in failing to make a further order specifically awarding the entertainment center to John.

Although in the decree the district court valued Charlene's personal property at $3,864 and John's at $5,946, it did not include this property in its chart wherein it calculated the division of the marital estate. We have corrected this omission on our modified chart below.

### 4. FAILURE TO COMPLY WITH PRETRIAL ORDERS

#### (a) Accounting for $3,000 Taken

John asserts that the district court erred in its determination that he failed to account for $3,000 he withdrew from the parties' rental account pursuant to the court's pretrial orders. John argues that he did account for his use of the $3,000 and points to the Menards and The Home Depot receipts in the record, as well as the receipt for $4,500 for the purchase of the heating and cooling unit for the Wirt Circle property.

The district court did note the $4,500 invoice from S & F Services for a heating and cooling unit but found that no evidence was submitted confirming that John paid that invoice. The court further found that since John was being awarded the Wirt Circle property, he would be the beneficiary of the improvement. The court also noted John's exhibit with the Menards and The Home Depot receipts and found that since John offered no evidence as to what the receipts represented, the court could not determine their relevance.

With respect to the district court's findings about the Menards and The Home Depot receipts, we find no abuse of discretion. John simply offered the exhibit containing these receipts into evidence without any testimony to inform the court about what the receipts represented.

As to the invoice from S & F Services, when John offered the exhibit, Charlene's attorney conducted a voir dire examination of John. During this voir dire, John testified that the tenant had complained about the air conditioning a few years prior to trial, but John did not act on the complaint until July 2011. John also testified during the voir dire examination that he told Charlene and her attorney that he was going to spend some money on the heating and cooling unit, that he purchased the unit from S & F Services and had it installed, and that he paid the invoice with funds from his checking account. The exhibit was then admitted into evidence.

We find no abuse of discretion in the district court's determination that John failed to account for the funds withdrawn from the rental account. The funds in question were withdrawn sometime prior to the temporary order entered on December 3, 2010. The receipts from Menards and The Home Depot, even if considered, only total $47.93. The invoice from S & F Services for the heating and cooling unit was dated July 22, 2011, well after the $3,000 had been withdrawn by John from the rental account. John testified that he paid this invoice from his checking account and did not trace this payment back to the $3,000 withdrawal he made at some point before December 2010. This assignment of error is without merit.

#### (b) Monthly Payments of $907

Finally, John asserts that the district court erred in finding he failed to pay Charlene $907 in October 2011 pursuant to the court's pretrial orders. There was evidence presented on the first day of trial in September 2011 that John failed to make the $907 payment in November and December 2010 and July through September 2011. The court found that John failed to make these five payments, and John does not dispute that finding. However, the court also found that John failed to make the October 2011 payment and ordered John to pay Charlene a total of $5,442 ($907 × six missed payments). The October 2011 payment was not yet due at the time of the first day of trial, and there was no further evidence presented on this issue on the second day of trial, which occurred in October 2011. The court abused its discretion in finding that John

failed to make the October 2011 payment. Thus, we modify this portion of the decree to show that John is ordered to pay Charlene a total of $4,535. However, we also note that the decree was entered on November 30, 2011, and that the temporary order was in place until the entry of the decree, at which time the court found that after the adjustment made in the decree, "the temporary order shall no longer apply and the temporary order is nullified by this Decree." Thus, the temporary order was still in effect and enforceable through November 30, 2011.

## 5. DIVISION OF MARITAL ESTATE

Based on the modifications set forth above, the modified marital asset distribution is as follows:

| Description | Charlene | John |
|---|---|---|
| Plaza Circle Property | $30,532 | $ 0 |
| Ponderosa Road Property | 23,872 | 0 |
| Wirt Circle Property | 0 | 37,131 |
| Marital Contribution to Bauman Avenue Property | 8,288 | 0 |
| Second Mortgage on North 65th Avenue Property | 0 | ( 16,950) |
| 1998 Dodge Intrepid | 0 | 2,300 |
| 2006 Dodge Stratus | 0 | 1,410 |
| 1995 Ford F-150 | 0 | 1,125 |
| 1990 Chevy Lumina Van | 0 | 1,750 |
| 2010 Ford Fusion (Awarded to Charlene) | 0 | 0 |
| Hustler Fast-Track Mower | 5,200 | 0 |
| US Bank Checking Acct. #4332 | 0 | 1,250 |
| Personal Property | 3,864 | 5,946 |
| Cash Withdrawn From Joint Acct. #0617 | 0 | 3,000 |
| Temporary Payments | 0 | 4,535 |
| Overdraft Payment | 155 | 0 |
| Subtotal | 71,911 | 41,497 |
| Equalization Payment | ( 15,207) | 15,207 |
| TOTAL | $56,704 | $56,704 |

Based upon the modifications set forth above, we modify the decree of dissolution to provide that Charlene pay to John as an equalization payment the sum of $15,207.

## VI. CONCLUSION

We modify the decree to show that the marital equity in the Plaza Circle property is $30,532; to include the second mortgage on the North 65th Avenue property in the division of the marital estate and to assign this debt to John; to award the purple couch, the 6-foot lighted Christmas tree, the wooden mailbox postage stamp holder, the blue reclining couch, and the cherrywood table and sofa to John as his nonmarital property; and to find that John owes Charlene a total of $4,535 under the temporary order for the five missed payments proved at trial, while noting again that the temporary order was still in effect and enforceable through November 30, 2011. These modifications are incorporated into the marital estate distribution

chart above and reflect a modified equalization payment from Charlene to John of $15,207. The decree is affirmed in all other respects.

AFFIRMED AS MODIFIED.