749 N.W.2d 470 (2008)
275 Neb. 832
William Jacob SITZ, appellant and cross-appellee,
v.
Ellen Katherine SITZ, appellee and cross-appellant.
No. S-07-395.
Supreme Court of Nebraska.
May 30, 2008.
*472 Barry D. Geweke, of Stowell, Kruml, Geweke & Cullers, P.C., L.L.O., for appellant.
Cheryl C. Guggenmos, of Guggenmos & Peterson, Broken Bow, for appellee.
*473 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
After 10 years of marriage, William Jacob Sitz sought a dissolution of his marriage to Ellen Katherine Sitz and a division of the marital property. William and Ellen had a premarital agreement, and this appeal concerns the effect of such agreement upon the division of the property.

SCOPE OF REVIEW
In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Id.

FACTS
The premarital agreement stated that William and Ellen wanted to "set apart" the property that was accumulated by each of them prior to their marriage. The parties disclaimed any right of inheritance or any interest in the property of the other that was accumulated prior to the marriage. Each party represented that they had made full disclosure of all property they currently held. The agreement provided that property then held in the individual names of each party would remain their sole and separate property. The agreement, which was offered at trial, contained attachments that purportedly listed the property of the parties at the time of the marriage.
William and Ellen married on June 3, 1995. This was a second marriage for both, and no children were born of the marriage. Thereafter, William remained employed selling animal health supplies and Ellen continued to work as a family counselor. In November 2001, Ellen and a colleague opened their own business, Sandhills Center for Services, Inc. (Sandhills Services). An exhibit that purported to compare the parties' W-2 income showed that in 2005, Ellen earned $30,146 and William earned $122,242. The 2005 end-of-year balance sheet of Sandhills Services indicated that the business had a negative equity of $31,551.
At trial, Ellen claimed that the premarital agreement was not enforceable because it did not disclose the ranch owned by William, a Pfizer annuity, and a property settlement debt to William's first wife. The trial court found that even if William's property statement did not disclose ownership of the ranch, there was no doubt that Ellen was aware William owned the ranch. The court also concluded there was no evidence to suggest that Ellen would have refused to sign the agreement had she known the ranch was to be considered premarital property.
At the time of the marriage, William had a Pfizer annuity with a vested accrued monthly benefit of $1,269 that would commence when he turned age 65. William stated he was not aware of the annuity when the premarital agreement was executed. The property settlement debt from William's previous marriage was approximately $33,750, which the trial court found to be a relatively small percentage *474 of his premarital estate. Although the Pfizer annuity and the property settlement debt owed by William were not disclosed in the agreement, the court determined that the nondisclosure of these facts did not result in the agreement's being unenforceable.
The trial court awarded the ranch to William subject to all encumbrances. The court concluded that Ellen was not entitled to a share of the increased value of the ranch because it was premarital property and there was no evidence that her contributions to managing and operating the ranch resulted in an increased value.
Evidence was presented concerning improvements to the ranch that were made with assets earned through the effort of both parties during the marriage. The improvements were valued at approximately $32,500, and the trial court awarded Ellen a percentage of these improvements.
The trial court determined that the $1,269 monthly benefit from the Pfizer annuity was premarital property. However, during the marriage, William earned an additional monthly benefit of $2,549. The court awarded Ellen one-half of the benefit earned during the marriage ($1,274 per month) to begin when William turned 65. William was ordered to prepare a qualified domestic relations order to effectuate the above transfer of the annuity.
A Pfizer savings plan was included in William's property statement attached to the premarital agreement. The approximate value of the savings plan on the date of the marriage was $28,631. The trial court awarded William this amount and the interest on such amount as premarital property. Because the court had no evidence as to earnings on the investment, the court applied a rate of return of 6 percent per year and determined that the approximate earnings on that investment during the marriage were $52,563. The value of the savings plan as of December 1, 2005, was $371,817.
The record showed that during the marriage, contributions to the Pfizer savings plan were made by William's employer and through deductions from his paychecks. The trial court held that earnings and benefits earned through employment were marital property. It deducted the above-described $52,563 to obtain the marital value of the savings plan, which the court found was $319,254. Ellen was awarded $159,627, or one-half the net value of the savings plan. William was ordered to prepare a qualified domestic relations order to reflect that division.
The other assets divided between the parties are not at issue, except for a Dodge truck. The parties were ordered to pay their individual debts incurred since December 1, 2005. Each party was ordered to indemnify and hold harmless the other party for such liabilities and all debts encumbering property received by each party.
William was ordered to pay $13,939 to the clerk of the court as a property settlement, to be payable to Ellen at $583 per month commencing on the first of each month beginning May 1, 2007, until paid. The trial court ordered William to pay alimony of $750 per month commencing May 1 for a period of 24 months. The alimony would terminate upon the death of either party or Ellen's remarriage. William was ordered to pay $5,000 in costs within 120 days of the entry of the decree, as well as $5,000 of Ellen's attorney fees in addition to any temporary allowance of such fees taxed as additional costs.

ASSIGNMENTS OF ERROR
William claims the trial court erred (1) in awarding Ellen $159,627 of his Pfizer *475 savings plan, (2) in awarding her a portion of his Pfizer annuity, (3) in finding that Ellen was entitled to one-half the value of the improvements to the ranch, (4) in finding that Sandhills Services had a "negative marital value" for purposes of asset division, (5) in ordering William to pay a property settlement judgment of $13,939, (6) in ordering him to pay $750 per month in alimony for 24 months, and (7) in ordering him to pay $5,000 of Ellen's attorney fees.
Ellen cross-appeals, claiming the trial court erred in failing to consider William's use of marital funds to pay his first wife a $33,750 property settlement award as a credit to Ellen's marital assets.

ANALYSIS
There are two principal issues for our resolution: What assets should the trial court have treated as marital property, and did the court make a fair and equitable division of the marital property? Under Neb.Rev.Stat. § 42-365 (Reissue 2004), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. Millatmal v. Millatmal, 272 Neb. 452, 723 N.W.2d 79 (2006). In the case at bar, the value of the assets is not in dispute.

DIVISION OF PFIZER SAVINGS PLAN
William asserts that the intent of the premarital agreement was that Ellen would not share in the benefits of his Pfizer savings plan. He argues that because the savings plan was described in the premarital agreement and because the Uniform Premarital Agreement Act describes "property" as an interest, present or future in real or personal property, including income and earnings, all increases in value of the Pfizer savings plan should not be considered marital property. See Unif. Premarital Agreement Act, 9C U.L.A. 39 (2001). We disagree.
The definition of "property" in the Uniform Premarital Agreement Act is simply a definition of the term as it is used in the act. However, that definition was not incorporated into the parties' premarital agreement. The premarital agreement stated that the parties agreed to disclaim any right to or interest in property accumulated "prior to" the marriage. The agreement said nothing about property acquired during the marriage, and the record reflects that the parties combined their incomes in a joint account and acted as if both parties had a right to the money.
As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. Davidson v. Davidson, 254 Neb. 656, 578 N.W.2d 848 (1998). William's contributions to the savings plan were made with deductions from his Pfizer paycheck, which was marital property. Accordingly, the contributions to the savings plan made during the marriage and the returns earned during the marriage were subject to division by the trial court. Thus, because the court merely awarded Ellen one-half of the benefits earned during the parties' marriage, we find no abuse of discretion.

DIVISION OF PFIZER ANNUITY
William argues that the trial court erred in awarding Ellen a portion of the Pfizer annuity. He again relies upon his interpretation of the word "property" in the premarital agreement as meaning present or future property and argues that the annuity was his property at the time of *476 the marriage and that any increase in value during the marriage should be his sole property. As pointed out above, the premarital agreement did not allow each party to keep the benefits earned through his or her employment during the marriage. Therefore, the general rule regarding the division of retirement plans applies.
Pursuant to Neb.Rev.Stat. § 42-366(8) (Reissue 2004), retirement plans are to be included in the marital estate. In the case at bar, the marital estate included only that portion of the pension plan earned during the marriage. (The amount of the pension plan that was earned prior to the marriage was set aside to William.) William earned an additional $2,549 in monthly benefits through his employment during the marriage, and this money was subject to division by the trial court in accordance with the same principles applied to the savings plan because it was marital property. The court awarded one-half of the additional $2,549 to Ellen. The court's division of this benefit was not an abuse of discretion.

VALUE OF IMPROVEMENTS MADE TO RANCH
William argues that the trial court erred in finding that Ellen was entitled to one-half the value of the well that was added to the ranch and one-third of the value of the improvements made to the home located on the ranch. He claims that because Ellen did not contribute any of her earnings toward these improvements to the ranch, she should not share in the value of the improvements to his premarital property. These improvements were paid for with funds earned during the course of the marriage and were therefore marital property that was subject to division. Ellen made no claim to the increase in value of the ranch as a whole, and we cannot say that the trial court abused its discretion in making this small award regarding improvements to the ranch.
Evidence at trial showed that the ranch was worth approximately $332,000 in June 1993, and in December 2005, the value had increased to $800,000. Ellen did not seek a share of the increase in this value because it was basically an increase in the value of the land. She did, however, seek a share of the value of the improvements placed on the property during the marriage that were paid for with funds out of the parties' joint checking account. Included in these improvements were the cost of a new well at $10,000 and improvements to the home of $22,500, which included new carpet, linoleum, curtains, wallpaper, interior paint, a patio door, a bay window, a front door, a lower door, bathroom tile, kitchen cabinets, a deck, underground sprinklers, and landscaping. It was admitted at trial that the joint checking account was used to pay for these improvements and other assets, including a boat and trailer, an International tractor and dual loader, a Honda all-terrain vehicle, an antique John Deere tractor, a Harley-Davidson motorcycle, and a John Deere riding mower. The trial court did not abuse its discretion in awarding part of the value of the improvements to Ellen.

VALUATION OF SANDHILLS SERVICES
William argues that the trial court erred in finding that Sandhills Services had a "negative marital value" for purposes of the property division. The business was marital property, and the court did not abuse its discretion in considering the negative value of the property in making its distribution of marital assets between the parties. At trial, Ellen produced a balance sheet for Sandhills Services that showed a negative total equity of $31,551. This negative value was obtained from the corporation's accountant, who had *477 been subpoenaed to testify. There was no evidence as to an alternate value for the corporation, and accordingly, the court used that as the value of this marital asset.

GENERAL PROPERTY DIVISION
William claims that the trial court erred in awarding the property settlement judgment of $13,939 to Ellen, because the court included the value of improvements to the ranch at $32,500 and the negative value for Sandhills Services of $15,776, which we have decided above. William contends an additional error occurred when the court included the value of a 1996 Dodge Ram truck in dividing the marital estate. He claims that because the ranch purchased the truck, the truck should not be included as part of the marital estate.
However, the record reflects that Ellen assisted William in the operation of the ranch and that the parties' shared in the ranch's profits or losses. Accordingly, because the truck was purchased with money that otherwise would have been distributed to the parties through profits, it was within the trial court's discretion to consider the truck property acquired with marital assets and subject to the division of the marital estate.

ALIMONY
William argues that the trial court erred in ordering him to pay $750 per month in alimony for 24 months. This argument has no merit. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. Millatmal v. Millatmal, 272 Neb. 452, 723 N.W.2d 79 (2006). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criteria is one of reasonableness. Id.
The record reflects that in 2005, Ellen earned $30,146 while William earned $122,242. Ellen had moved from Kearney, Nebraska, to Loup County to live on the ranch. She invested time in assisting with the ranch and supporting William's career. The substantial disparity in the parties' income, combined with the support Ellen provided to the ranch and William's career, demonstrate that the trial court's award of alimony was reasonable under the circumstances.

ATTORNEY FEES
William argues that the trial court abused its discretion in awarding Ellen attorney fees. In an action for dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. Gress v. Gress, 271 Neb. 122, 710 N.W.2d 318 (2006). The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. Id. We conclude the trial court did not abuse its discretion in ordering William to pay $5,000 in attorney fees.

CROSS-APPEAL
Ellen assigns on cross-appeal that the trial court erred in failing to credit her for William's premarital debt paid with marital funds. She asserts that although she brought debt into the marriage and that that debt was paid with marital funds, her debt was disclosed in the premarital agreement, thereby making payment of her premarital debt with marital funds significantly *478 different than the payment of William's premarital debt.
Both parties had premarital liabilities that were paid from marital funds. The record shows that the trial court excluded all premarital debt from its calculations, regardless of the parties' disclosure. We conclude that the trial court did not abuse its discretion in not allowing Ellen to receive a credit in the amount of the marital funds used by William to pay his undisclosed premarital debt.

CONCLUSION
Finding no merit to the errors assigned on appeal and cross-appeal, we affirm the judgment of the district court dissolving the marriage, dividing the property between the parties, and awarding alimony and attorney fees.
AFFIRMED.