IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LAGERSTROM V. NEAL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

THOMAS J. LAGERSTROM, APPELLEE AND CROSS-APPELLANT,

V.

TERESA L. NEAL, APPELLANT AND CROSS-APPELLEE.

Filed March 17, 2015.    No. A-14-210.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed in part as modified, and in part reversed and remanded.

Andrew D. Snowden and Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Terrance A. Poppe, Benjamin D. Kramer, and Andrew K. Joyce, Senior Certified Law Student, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

PIRTLE, Judge.

INTRODUCTION

Teresa Neal appeals the decree of dissolution of the parties' marriage entered by the district court for Lancaster County on December 20, 2013. She asserts the district court abused its discretion in dividing the marital estate, in calculating the amount of child support and alimony to be paid by Thomas Lagerstrom, and in failing to award her reasonable attorney fees. Thomas cross-appeals and asserts the district court abused its discretion in dividing the marital estate, in calculating the amount of child support and alimony, and in ordering him to maintain a life insurance policy to provide for alimony and child support. For the reasons that follow, we affirm in part as modified, and in part reverse and remand.

- 1 -

BACKGROUND

Tom and Teresa were married June 29, 1990. There were two children born of the marriage; Katherine who has reached the age of majority, and Ian, age 17 at the time of trial. The marriage was Tom's first and Teresa's second.

Tom filed his complaint for dissolution of marriage on or about July 30, 2012, and the parties separated on August 2. Tom was ordered to pay temporary child support in the amount of $1,500 per month, and temporary alimony in the amount of $2,000 per month.

At the time of trial Tom was 57 years old. He obtained a Bachelor of Science degree in electrical engineering from the United States Naval Academy in 1977, and he completed the Navy's nuclear power propulsion training program. Tom obtained postgraduate degrees including a Juris Doctor degree from the University of Nebraska College of Law in 1984, a Master of Science degree in industrial management systems engineering from the University of Nebraska in 1989, and a Doctorate degree in industrial management systems engineering from the University of Nebraska in 1990. When the parties married, Tom was practicing law in private practice, and he later became a teaching assistant at the University of Nebraska, first in Lincoln, then in Omaha while he pursued his master's degree.

Tom retired from the military in 2007 and he will receive a military pension when he reaches the age of 62. The parties agree that the military pension accumulated during the marriage would be divided equally between the parties.

Tom worked from December 2001 to June 2008 for Ayars and Ayars, Inc., in areas including engineering management, human resources, and project management. He began working for Pederson Power Products, a predecessor to Eaton Corporation, in June 20008. At the time of trial, Tom was employed as engineering manager for Eaton Corporation in Omaha. In addition to his employment at Eaton, Tom is a consultant for Architecture Etc. His monthly gross income at the time of trial was approximately $11,403.12, or $136,837.44 annually.

At the time of trial, Teresa was 55 years old. She obtained a Bachelor of Arts degree in accounting from James Madison University in 1980 and a Master of Business Administration degree from the University of Nebraska in 1988. Teresa's first job in 1980 was for TRW. She started contributing to a 401(K) through TRW, and her employer matched her contributions. She was employed at Cushman from approximately 1990 to 1993, and she earned approximately $34,000 per year.

After the parties' first child was born in August 1993, Teresa left her position as a staff accountant for Cushman to be a stay-at-home mother. Teresa was the primary caregiver for the children while Tom was at work. Teresa also testified that she was very active in caring for Tom's parents when they were sick, up until their deaths.

Tom and Teresa testified that their daughter lives with Teresa and she continues to rely on them for maintenance and support while she is a student at the University of Nebraska. She has earned a scholarship that pays for her tuition, but fees, books, and room and board are not covered. At the time of trial, the parties' son also lived with Teresa and was to begin his senior year of high school in the fall.

Teresa testified that she believed it would be very difficult to return to work after a twenty year gap in employment. She testified that many jobs require computer skills and

proficiency in word processing programs and Excel, which she does not currently have. She testified that the jobs which require those skills pay approximately $8.50 per hour. She also testified that even if she were to acquire the necessary computer skills, she did not believe that she would be able to earn more than $8.50 per hour.

In determining the amount of child support and alimony to be paid by Tom to Teresa, the court attributed a minimum wage to Teresa, using Tom's proposed child support calculation. The court ordered child support to be paid on behalf of the parties' minor child in the amount of $1,215.00 per month. The court awarded alimony to Teresa in the amount of $2,500.00 per month through April 2015, a total of 21 consecutive months. The court ordered the amount to increase in May 2015 to $3,250.00 per month for a period of 89 consecutive months. Tom was also ordered to maintain one of the life insurance policies awarded to him in "a decreasing term amount to provide for Plaintiff's child support and alimony obligation in the event of the untimely death of the Plaintiff during the period of time that the Plaintiff is obligated to pay child support and alimony." The value of the life insurance policy was to be in an amount equal to the unpaid child support and alimony.

The parties accumulated numerous assets throughout the course of their marriage including cars, bank and stock accounts, life insurance policies, retirement benefits, and other personal property. The value and the marital or nonmarital character of several assets are in dispute.

When Tom's father died in 1992, he bequeathed to Tom a portfolio of stocks with a value of $245,325.65. Tom testified that stocks from his father's estate were deposited into an Edward Jones account titled in Tom's name only by his brother, the personal representative of his father's estate. Tom testified that the Edward Jones accounts were subsequently titled in his name and Teresa's name jointly for the purpose of "convenience of administration and for estate planning."

The Edward Jones portfolio consisted of four investment accounts: (1) an account titled in the names of Tom and Teresa as joint tenants with right of survivorship; (2) Tom's individual retirement account; (3) Teresa's individual retirement account; and (4) Tom's ROTH individual retirement account.

The first account had a total value of $609,331.06 in August 2012. The account was split into four separate sub-accounts: (1) cash and money market funds with a value of $32,346.96; (2) bonds with a value of $28,449.10; (3) stocks with a value of $435,526.32; and (4) mutual funds with a value of $113,008.68.

Tom testified that the stock portions of the portfolio derived directly from his inheritance and have stayed in the account. Tom testified that he managed the account and stocks were bought and sold. By 2012 three of the original stocks remained in the account: Exxon, Union Pacific Corp, and AT&T. The stock account paid regular dividends which were reinvested in the cash and money market account, and reported on the parties' joint income tax returns.

The Edward Jones bond account originated in 2008 when $15,000 was withdrawn from the cash and money market funds account to purchase Omaha Public Power District bonds. On December 14, 2010, another $10,367.45 was withdrawn from the cash and money market funds account to purchase Nebraska Public Power District bonds.

The district court found the Edward Jones money market account was marital property, and the Edward Jones stock and bond accounts were Tom's nonmarital property. Tom conceded that the mutual funds are a marital asset, and does not contest the district court's designation of the money market account as marital property. Only the character of the stock and bond accounts are at issue in this appeal.

The district court found Teresa's IRA was marital property and the value of the account was reflected as her asset in the division of property. The court also determined that Xcel Energy stock was Tom's nonmarital asset. The court accepted the parties' valuation of the marital home, and determined that a portion of the home was purchased with Teresa's nonmarital assets, so that portion was excluded from the property division. Teresa received a judgment in the sum of $89,631.00 for the equalization of the marital estate. Teresa was also awarded one-half of the marital component of Tom's military retirement as of the date of the decree.

## ASSIGNMENTS OF ERROR

On appeal, Teresa asserts the trial court abused its discretion in: (1) dividing the marital estate; (2) calculating the amount of child support to be paid by Thomas; (3) determining the amount of alimony to be paid by Thomas; and, (4) not awarding Teresa reasonable attorney fees.

In his cross-appeal, Thomas asserts the trial court abused its discretion in (1) attributing a minimum wage income to Teresa when calculating child support, (2) awarding excessive alimony to Teresa under the circumstances, (3) determining that a portion of the marital home was Teresa's premarital asset, and (4) ordering Tom to maintain a life insurance policy to provide for alimony and child support.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Bussell v. Bussell,* 21 Neb. App. 280, 837 N.W.2d 840 (2013).

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

*Division of the Marital Estate.*

The division of the marital estate in a dissolution case is initially left to the discretion of the trial court and will be reviewed by an appellate court de novo on the record and affirmed absent an abuse of discretion. *Sitz v. Sitz,* 275 Neb. 832, 749 N.W.2d 470 (2008).

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Bussell v. Bussell, supra*. The ultimate test in determining the

appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id.*

Property which one brings into the marriage is generally excluded from the marital estate. *Gress v. Gress,* 271 Neb. 122, 710 N.W.2d 318 (2006). When awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the gift or inheritance and is not considered a part of the marital estate. *Bussell v. Bussell, supra.*

Both parties assign error to the district court's distribution and valuation of the marital estate. Teresa asserts the trial court abused its discretion by: (1) characterizing the Edward Jones stock account as nonmarital property; (2) by characterizing the Edward Jones bond account as nonmarital property; (3) by characterizing the Xcel Energy, Inc. stock as nonmarital property; (4) by failing to determine the nonmarital portion of Teresa's Edward Jones IRA and setting it off as hers; (5) by not including the parties' property tax liability in the division of marital property; and (6) by valuing the Edward Jones mutual funds account, the Edward Jones cash and money market accounts and Tom's IAA-CREF account as of the date of separation.

*Edward Jones Stock Account.*

Teresa asserts the district court erred when it classified the Edward Jones stock account as nonmarital property. The evidence shows that these accounts were initially funded by Tom's inheritance from his father. There was evidence that the dividends from the stock account were deposited into the parties' joint account and used for marital expenses, and Tom testified that he chose to use the money for the benefit of the family. Tom has exchanged some securities for others, but there is no evidence that he used marital funds to do so.

Teresa asserts that the change in value of the account was due to Tom's efforts and managements of the accounts through the years. She asserts that Nebraska case law dictates that property accumulated and acquired by either spouse during the marriage is part of the marital estate. She cites case law which found a premarital savings account titled solely in the husband's name was found to be marital because the husband deposited funds during the marriage. See *Harris v. Harris,* 261 Neb. 75, 621 N.W.2d 491 (2001).

However, in *Harris*, the money deposited was a result of the income earned during the marriage, which was a marital asset, therefore the account lost its nonmarital designation.

This case more closely parallels the facts in *Schuman v. Schuman,* 265 Neb. 459, 658 N.W.20 30 (2003). In *Schuman,* the husband inherited $20,000 from his mother, placed the money in a jointly held account, and then paid $19,000 as a down payment on the parties' acreage. The court held that the $19,000 was nonmarital property, despite being jointly titled, as it was traceable to his mother's bequest.

The Nebraska Supreme Court has stated that the character of the property, and not the name on the title, is of greater importance when characterizing certain property as marital or nonmarital. In *Schuman,* the court stated that it disapproved of the interpretation that "nonmarital property which during a marriage is titled in joint tenancy cannot be considered a nonmarital asset in an action for dissolution of marriage." *Schuman v. Schuman, supra.* The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial

court's ability to determine how the property should be divided in an action for dissolution of marriage. *Plog v. Plog,* 20 Neb. App. 383, 824 N.W.2d 749 (2012).

In this case, despite being jointly titled, the initial investment and the stocks bought and sold during the marriage were all derived from and traceable to inherited funds. Further, there is no evidence that Teresa or Tom contributed their personal funds or funds from marital accounts to acquire the stock account assets, and Tom testified that he alone managed the account and made the necessary decisions regarding how the funds were used.

Teresa also asserts that the Edward Jones accounts were titled in the parties' names jointly, and "clearly Tom intended to gift the stocks to the marriage," therefore she is entitled to half of the account. Teresa also asserts that she is entitled to the funds because she assisted Tom's parents during their final years of life. She asserts that Tom intended to gift his inheritance to her by holding the property as joint tenants.

Nebraska law states that a "clear and unmistakable intention on the part of the donor to make a gift of his property is an essential element of the gift and this contention must be inconsistent with any other theory." *Masonic Temple Craft of Omaha v. Stamm,* 152 Neb. 604, 42 N.W.2d 178 (1950).

The evidence shows that Tom's mother passed before the parties married, and Tom's father passed in 1992, shortly after the parties married. Although Teresa's efforts are laudable, there is no clear and unmistakable intent that the stock account was intended to be a gift of Tom's inheritance to her, and this theory contrasts with Tom's stated reasons for holding the property jointly. Tom testified that his purpose in holding the property jointly with Teresa was because he was serving in the armed forces and was subject to deployment. He stated that if something were to happen to him, he did not want the property to be tied up in probate and he wished it to be available for Teresa and the children.

We find the district court did not abuse its discretion in concluding that the Edward Jones stock account was Tom's nonmarital asset.

*Edward Jones Bond Account.*

Teresa asserts the district court erred when it classified the Edward Jones bond account as nonmarital property. She asserts Tom did not meet his burden to prove that it was nonmarital property.

Tom testified that the assets in the bond account are derived from the stock inherited through his father's will. However, he also testified that the bonds were "purchased from the money market." The evidence shows that the Edward Jones bond account originated in 2008 when $15,000 was withdrawn from the money market account to purchase Omaha Public Power District bonds. In 2010, another $10,367.45 was withdrawn from the money market account to purchase Nebraska Public Power District bonds. The district court found that the money market account was marital property. If the money market account was determined to be marital property, then the bond account which was funded with money from the marital account should have also been labeled marital property. We find the district court erred in labeling the bond account as nonmarital property, and we remand the distribution of the marital estate to the district court for a recalculation, including the value of the bond account as a marital asset.

*Xcel Energy Inc. Stock.*

Teresa asserts the trial court erred in finding the Xcel stock was nonmarital property. Tom testified that he did not purchase any shares of Xcel stock during the marriage. Teresa testified that she believed that Tom had purchased shares during the marriage with marital funds. The property was deemed nonmarital property and was excluded from the marital estate.

The evidence shows Tom began purchasing shares of Northern States Power with money he saved from doing chores at the age of 15 in 1970. Tom testified that he purchased a total of 35 shares of Northern States Power stock in 1970, 1972, and 1973. Share certificates were issued in 1970, 1972, 1973, 1986, 1998 and 2003. Tom testified that he last purchased stock in 1973, but he was issued additional shares in 1986, 1998 and 2003 stemming from Xcel Energy's acquisition of Northern States Power and from passive dividend reinvestment and stock splits. The Xcel stock paid dividends which were reported on the parties' joint income taxes. On March 28, 2013, Tom held a total of 1,373 Xcel shares, and the value of the shares at the time of trial was approximately $40,000.

The evidence shows the shares were purchased prior to the parties' marriage, and the additional shares were the result of stock splits. The only evidence that marital property was used to purchase the shares is Teresa's testimony, which is in conflict with Tom's testimony. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Pohlmann v. Pohlmann,* 20 Neb. App. 290, 824 N.W.2d 63 (2012). We find that the district court did not abuse its discretion in determining the Xcel shares were a nonmarital asset.

*Teresa's Edward Jones IRA.*

As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Sitz v. Sitz,* 275 Neb. 832, 749 N.W.2d 470 (2008). Retirement and pension plans are to be included in the marital estate, but typically the marital estate includes only that portion of pensions or retirement accounts earned during the marriage. *Id.,* see also *Bandy v. Bandy,* 17 Neb. App. 97, 756 N.W.2d 751. (2008). In this case, the court found that Teresa did not establish that her IRA was nonmarital property. The trial court attributed $118,128.00 to Teresa, an amount equal to 75 percent of the $157,504.00 total value of the account.

Teresa asserts the trial court abused its discretion in failing to determine the nonmarital portion of Teresa's Edward Jones IRA and setting it off to her.

The burden of proof to show that property is nonmarital remains with the person making the claim. *Plog v. Plog,* 20 Neb. App. 383, 824 N.W.2d 749 (2012). Teresa presented evidence that she worked and contributed to her retirement account prior to the parties' marriage. Her affidavit asserts that she began contributing to an IRA in her first month of employment in 1980, and she continued to contribute to an IRA from 1990 to 1993 when she worked for Cushman. Tom testified that the Edward Jones IRA account in Teresa's name contains her 401(k) rollover from her employment at Cushman. The parties married in 1990, the same year Teresa began working for Cushman. At some point after Teresa stopped working in 1993, the IRA from Cushman was rolled over into the current Edward Jones account.

The only evidence Teresa submitted to prove the premarital source of the IRA is a statement from the Social Security Administration purportedly showing her annual contribution to social security from 1976 to 2002. While this statement shows her total earnings for each year during that period, it does not show how much was contributed to the 401(K) or IRA accounts or what percentage of her income was contributed. There is no evidence showing the source of the money used to fund the IRA account in her name, when the funds were invested, or whether there were any withdrawals from the account before the marriage. The Nebraska Supreme Court has held that where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate. *Shockley v. Shockley,* 251 Neb. 896, 560 N.W.2d 777 (1997). Upon our review of the record, we find the trial court did not abuse its discretion in determining that Teresa did not meet her burden of showing that the IRA was nonmarital property.

*Property Tax Liability.*

In the distribution of the marital estate, the district court awarded Teresa the marital home, valued at $244,300. She asserts the district court failed to include the past due property tax liability associated with the marital home in the calculation. She asserts the tax liability accrued in the second half of 2012 prior to separation should have been used to calculate the net value of the asset.

Teresa cites *Meints v. Meints*, 258 Neb. 1018, 608 N.W.2d 564 (2000), where the Nebraska Supreme Court found the husband's past-due tax liability was to be included as marital debt in the parties divorce. However, the tax liability in *Meints,* was incurred from 1990 to 1996, and the parties did not divorce until 1998. Here, the value of the marital estate was determined as of the date of separation, August 2, 2012 and the relevant portion was not due until almost a year later on August 1, 2013.

A marital debt has been defined by this court as a debt incurred during the marriage and before the date of separation, by either spouse or both spouses, for the joint benefit of the parties. *Finley-Swanson v. Swanson,* 20 Neb. App. 316, 823 N.W.2d 697 (2012). The property tax debt Teresa is claiming equals $2,379.59 and represents the second half taxes of 2012. However, for the majority of the relevant period, Tom did not reside in the home, and the tax debt for that time period did not become due until almost a year after the marital estate was valued. Therefore, we find the district court did not abuse its discretion by not including a credit for Teresa for future tax liability on the residence.

*Valuation Date.*

Teresa asserts the trial court erred in valuing the parties' assets as of the date of separation, rather than using the date of trial.

Nebraska courts have held that there is no "hard and fast rule" concerning the valuation date, so long as the selected date bears a rational relationship to the property to be divided, and the selected date is reviewed for an abuse of discretion. *Myhra v. Myhra,* 16 Neb. App. 920, 756 N.W.2d 528 (2008). She asserts the valuation date bears no relationship to the property divided, and fails to take into consideration changes in the market during the pendency of the proceedings.

In *Tyma v. Tyma,* 263 Neb. 873, 644 N.W.2d 139 (2002), the Nebraska Supreme Court stated that the marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties. The court found it was reasonable for the district court to conclude that no property was accumulated and acquired through the joint effort of the parties after the date of separation, thus the district court did not err in using that date to identify the composition of the marital estate, as opposed to the date of dissolution. *Id.*

Similarly, the district court in this case, used the date of separation to value the money market and mutual fund accounts. After the date of separation the property accumulated was not a result of the joint effort of the parties, thus the district court did not abuse its discretion in valuing the marital estate on that date.

The district court also used the date of separation to value several of the parties' other accounts including the Shenandoah Life and Shenandoah Life RDA accounts, the CMFG Life account, the New York Life Account, the Union Bank accounts and Tom's TIAA-CREF account. Teresa asserts it was an abuse of discretion not to use the value of the TIAA-CREF account at the time of trial. However, the Nebraska Supreme Court has stated that "district courts have broad discretion in valuing pension rights and dividing such rights between the parties." *Tyma v. Tyma, supra*. The date of separation was rationally related to the date used to value the other property contained in the marital estate, and we cannot find the district court abused its discretion in using the same date for the TIAA-CREF account.

*Marital Home.*

Thomas asserts in his cross-appeal that the trial court abused its discretion in determining that a portion of the value of the marital home was Teresa's premarital asset.

The court in *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997) found that the wife who owned the property prior to the marriage was entitled to the equity in the marital home, and the husband was entitled to be compensated for his contributions to the property, and half of the mortgage reduction.

Prior to the marriage, Teresa owned a home located at 7901 South Street. After the parties were married Tom and Teresa lived in the home until it was sold in 1997. During that time, the parties reduced the existing mortgage by $47,150 using money from a joint account. The sale of the home resulted in a net profit of $95,886.39, which was used to purchase the marital home on Red Deer Drive. The trial court excluded $72,291.39 from the marital estate as Teresa's nonmarital property, an amount equal to the equity in the South Street home less half of the mortgage reduction.

Tom asserts Teresa's premarital contribution to the marriage was commingled with his assets in such a manner that the funds from the South Street home lost their premarital character. He asserts he paid $12,000 to refinance the South Street home, but did not provide any evidence to support this assertion. Tom testified that he paid to refinance the mortgage on the South Street home, and withdrew over $40,000 from the Edward Jones money market account to pay for "new windows, siding, refinishing or refurbishing of the home" on Red Deer Drive.

As we stated above, the trial court found that the Edward Jones money market account was marital property and we found the trial court did not err. Thus the trial court did not err in finding those funds were not solely attributable to Tom. Upon our review of the evidence we find

the trial court did not abuse its discretion in setting off a portion of the value of the marital home as nonmarital as the funds resulted from the sale of Teresa's premarital home. Further, while Tom may have made contributions to the home on South Street, he did not produce adequate evidence of the value of the contributions. Thus we find no abuse of discretion in the determination that a portion of the value of the marital home was Teresa's premarital asset.

*Child Support Exemption.*

Teresa asserts the trial court abused its discretion in calculating the amount of child support to be paid by Tom.

The decree states that Tom "shall be entitled to claim the minor child as a dependent and tax credit for federal and state income taxes each year commencing with the 2013 tax year provided that he is current on his child support obligation as of December 31 of said year." However, the Basic Net Income and Support Calculation attached to the decree shows the child as an exemption in Teresa's column, which affects the overall calculation of child support due. As demonstrated in "Exhibit A" attached to Tom's brief, the amount of child support owed to Teresa increases if Tom is awarded the exemption as ordered in the decree. We find the discrepancy between the decree and the support calculation worksheet is an error and we remand this issue to the district court for an amended calculation of the amount of child support owed to Teresa.

*Child Support on Cross-Appeal.*

In his cross-appeal, Tom asserts the trial court abused its discretion by attributing a minimum wage income to Teresa when calculating his child support obligation. He asserts that Teresa is an educated woman who is capable of earning much more than minimum wage "through reasonable effort."

Under the Nebraska Child Support Guidelines, if applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunity. *Neb. Ct. R. §4-204.* Earning capacity may be used where "evidence is presented that the parent is capable of realizing such capacity through reasonable effort." *Collins v. Collins,* 19 Neb. App. 529, 808 N.W.2d 905 (2012).

Teresa testified at trial that although she holds a bachelor's degree in accounting, and a master's degree in business administration, she has been out of the work force since 1993. She testified that she believed it would be difficult for her to find employment at this point in her life after a twenty-year gap in employment. She testified that she did not believe she would be able to obtain employment which would pay more than $8.50 per hour. Teresa testified that she did not make an attempt to obtain employment or enroll in continuing education programs because of the stress of the divorce proceedings and her personal health problems. In addition to this evidence, the trial court relied on Tom's own child support calculation to determine the amount of child support to be paid. Tom attributed a minimum wage income to Teresa and submitted it to the court at trial.

We find that, giving due consideration to Teresa's work history, education, occupational skills, and potential job opportunities it was appropriate to attribute some earning capacity to her, although she does not currently have an actual income. However, in light of her testimony that

regarding her potential earning capacity, we cannot find that the trial court abused its discretion in attributing only a minimum wage income to Teresa rather than the monthly income she was earning when she was last employed in 1993.

*Alimony.*

In the decree, the district court ordered Tom to pay Teresa alimony in the amount of $2,500.00 per month for a total of 21 months, and then commencing May 1, 2015, Tom was to pay alimony in the amount of $3,250.00 per month for a period of 89 consecutive months.

Teresa asserts the trial court abused its discretion in determining the amount of alimony to be paid by Tom.

In his cross-appeal, Tom asserts the district court abused its discretion by awarding alimony to Teresa that was excessive in amount and duration.

When a dissolution of marriage is decreed, the court may order payment of such alimony by one party to the other as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. Neb. Rev. Stat. § 42-365.

In addition to the criteria listed in § 42-365, a trial court is also to consider the income and earning capacity of each party, as well as the general equities of each situation. *Smith v. Smith,* 20 Neb. App. 192, 823 N.W.2d 198 (2012). Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Smith v. Smith,* 20 Neb. App. 192, 823 N.W.2d 198 (2012).

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Becker v. Becker,* 20 Neb. App. 922, 834 N.W.2d 620 (2013). The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.* Disparity in income or potential income may partially justify an award of alimony. *Id.*

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Bussell v. Bussell, supra*, citing *Jensen v. Jensen,* 20 Neb. App. 167, 820 N.W.2d 309 (2012).

Tom and Teresa's marriage was one of long duration. The record reflects that they were married for approximately 22 years prior to separating and that they raised two children, one to the age of majority, during the marriage. Evidence from the trial revealed that both parties made contributions to the marriage. In 1993, Teresa quit working and focused on raising the children full-time, and she continued to care for and provide a home for the children after the parties separated. During the marriage, Tom was the primary wage earner for the family and helped with the care and maintenance of the home.

The evidence shows that Tom's monthly income from all sources exceeds $11,000. At the time of trial Teresa was not employed, as she had left the workforce with the support of Tom,

to care for the minor children after the birth of the parties' first child in 1993. Teresa asserts she made significant contributions to the marriage by putting her career on hold, and caring for the children. She asserts she is not currently capable of earning more than $8.50 per hour if she were to return to work. She asserts her living expenses are approximately $6,000 per month, and the alimony awarded was unreasonable and inadequate. Upon our review of this exhibit, it is clear that some of the items included in Teresa's monthly budget are speculative at best, or for nonessential items. She also includes the cost of food, products, and services which are attributable to the parties' two children, one of whom has already reached the age of majority.

Upon our de novo review of the record, we cannot say that the district court's award of alimony to Teresa was an abuse of discretion. The district court ordered alimony for a total of 110 months, with the amount of alimony to increase after the termination of child support payments to benefit the parties' minor child. It appears the court considered the contributions of the parties to the marriage, as well as the fact that Teresa continues to provide a home and care for the parties' children and plans to do so throughout their college years.

The purpose of alimony is not to equalize the income of the parties, but the trial court recognized that Teresa had been out of the workforce and would likely not be able to return to a position at the level she left in 1993. Teresa testified that it would be difficult to regain employment without brushing up on her computer skills, but she did not indicate it would be impossible. Further, the parties' minor child will have reached the age of majority in April 2015, and Teresa would be able to reenter the workforce without interfering with the interests of the minor child, if she so desires.

The evidence shows that Teresa retained possession of the marital home, which is not currently subject to any mortgage debts or loans. The evidence also shows that the parties amassed significant assets during the course of the marriage, and, as we found above, the marital assets were evenly distributed among the parties. As a result, Teresa received an equalization payment from Tom in the amount of $89,341. Teresa also will receive a portion of Tom's military pension, and a portion of his social security distributions as they become available.

After considering all of the factors involved in an award of alimony and the particular facts of this case, we cannot say that the district court's award of alimony was an abuse of discretion.

*Attorney Fees.*

In a marital dissolution action, an award of attorney fees depends on a variety of factors, including the amount of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Bussell v. Bussell, supra*, citing *Molczyk v. Molczyk,* 285 Neb. 96, 825 N.W.2d 435 (2013). On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Vlach v. Vlach,* 286 Neb. 141, 835 N.W.2d 72 (2013).

The decree ordered each party to pay their own attorney fees. Teresa asserts that the district court abused its discretion in denying her request for attorney fees. Specifically, Teresa asserts she was entitled to an award of attorney fees due to the amount in controversy and the complex nature of the financial issues involved, and the disparity in income between the parties.

She also asserts she is entitled to attorney fees because the court ruled in her favor regarding the nature of the Edward Jones cash and money market accounts.

It is true that the court ruled in her favor regarding two of the Edward Jones accounts counted as marital assets. However, the court ruled in Tom's favor finding two of the other Edward Jones accounts and certain stock accounts were premarital property, as well as finding that Teresa's IRA was marital property. Upon our review of the evidence, we find the trial court did not abuse its discretion in ordering both parties to pay their own attorney fees.

*Life Insurance.*

In his cross-appeal, Tom asserts the trial court abused its discretion by ordering him to maintain a life insurance policy to provide for alimony and child support in the event of his death during the time that he is obligated to pay child support and/or alimony. Tom does not assign error to the order to maintain a life insurance policy as it relates to the amount of child support owed; rather, his assigned error is specifically directed at the requirement that he provide a life insurance policy to fund Teresa's alimony.

The decree states that alimony "shall terminate upon Defendant's remarriage or the death of either party." The trial court then ordered Tom to maintain "one of the life insurance policies awarded to him by the Court in a decreasing term amount to provide for Plaintiff's child support and alimony obligation in the event of the untimely death of the Plaintiff during the period of time that Plaintiff is obligated to pay child support and/or alimony." The obligation to provide life insurance was ordered to be equal to the unpaid child support and alimony. The child support portion was to end on the minor child's 19th birthday, and the obligation to provide for alimony was to end at the conclusion of the alimony obligation.

It appears that Tom is responsible for providing for the entire alimony award, even if his death were to predate the end of the alimony period. Upon our review of the record, it appears the alimony provision for the life support obligation is inconsistent with the statement that Tom's obligation to pay alimony to Teresa is terminable upon the death of either of the parties. We affirm the requirement to provide a life insurance policy for the child support obligation, but we vacate the provision requiring Tom to maintain a life insurance policy in the amount of the outstanding alimony award, and find that requirement to be an abuse of discretion by the trial court.

## CONCLUSION

We affirm the trial court's findings with regard to the Edward Jones stock account, the Xcel stocks, Teresa's IRA, the real estate tax liability for the marital home, the valuation date of the parties' accounts, the allocation of the equity in the marital home, alimony, and attorney fees. We affirm the court's decision to attribute a minimum wage to Teresa for the calculation of child support. However, having found the exemptions in the child support calculation are not consistent with the decree, we remand the issue of child support for a new calculation. Having found the assets in the Edward Jones bond account were purchased using a marital account, we remand the distribution of the marital estate to the trial court for a recalculation to include the

- 13 -

bond account as marital property. We also modify the order for Tom to maintain a life insurance policy to cover only the outstanding portion of the child support order.

AFFIRMED IN PART AS MODIFIED, AND
IN PART REVERSED AND REMANDED.